[S. F. No. 3540. Department Two.—June 25, 1908.]

A. C. DAUPHINY, Appellant, v. A. H. BUHNE, Respondent.

LIBEL—FALSE CHARGE OF OFFICIAL CORRUPTION AGAINST CANDIDATE FOR RE-ELECTION—PRIVILEGED COMMUNICATION NO DEFENSE.—The publication of a false charge against a candidate for re-election to office, that while in office he was guilty of official corruption, in soliciting and accepting personal benefits as a consideration to influence his officials acts, as a member of a city council, is libelous

*per se;* and there is no privileged communication under the code, or general law, which will exempt the defendant publishing such charge, from responsibility for falsehood.

ID.—TRUTH OF CHARGE THE ONLY JUSTIFICATION.—A libel is no more justifiable when published against a candidate for public office, than if published of him on any other occasion. Though the publication of the truth is justifiable; yet the publication of a false-hood finds no justification whatever under the law. The law does not permit the character of those seeking position to be destroyed under any guise of privileged publication. One can justify the publication of a libel against a candidate for public office upon privilege, only by proof that the accusation is true.

ID.—ERROR IN INSTRUCTIONS—PRIVILEGE—LIBELOUS CHARGE.—It was error to instruct the jury that the publication was privileged, where there was no evidence to sustain it, but the facts and circumstances connected with the publication negatived the existence of such privilege. The question being one of law, it was the court's duty, if requested, to instruct the jury that the publication was not privileged. The court also erred in refusing to instruct the jury that the article set forth in the complaint was libelous upon its face.

ID.—FAILURE TO PROVE PLEA OF JUSTIFICATION—AGGRAVATION.—The court also erred in refusing to instruct the jury that where the defendant reiterates the alleged libelous charges in his answer, and offers no evidence to prove their truth, if the jury were satisfied that it is made with a knowledge of its falsity and maliciously, and not in good faith, such plea of justification is an aggravation of the wrong done to the plaintiff, and may be considered by the jury in assessing damages.

ID.—QUESTION OF DAMAGES—WANT OF MALICE—ERRONEOUS INSTRUC-TION.—There is responsibility for actual and substantial damages for loss of reputation, etc., even where there is no actual malice. What the responsibility should be is a question for the jury under instruction explicitly declaring the rule under which it should be ascertained. It was error to instruct the jury, that "if an honest mistake is made in an honest attempt to enlighten the public it must reduce the damages to a minimum, if the fault itself is not serious, and there should be no reasonable responsibility where there is no malice."

ID.—ERRORS IN EVIDENCE—DUTY OF APPELLANT—ABSENCE OF REFER-ENCE TO TRANSCRIPT.—It is the duty of counsel for appellant properly to index the transcript, and to point out therein the rulings of the court objected to in the admissibility of evidence, upon which he relies as erroneous; and where he fails to enlighten the court in his argument, as to where the alleged errors may be found, it will be assumed that they were not deemed of sufficient importance to undertake the task; and this court will not assume the burden of doing it.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. E. W. Wilson, Judge.

The facts are stated in the opinion of the court.

A. W. Hill for Appellant.

Henry L. Ford, L. M. Burnell, and A. J. Monroe, for Respondent.

LORIGAN, J.—This is an action for libel. In the early part of 1901 plaintiff was a member of the firm of A. C. Dauphiny & Company, doing a general merchandise business in the city of Eureka, and both he and defendant were members of the common council of said city. At that time there was presented to the council petitions by various railroad companies for franchises to operate their roads across the city front of the city. Among these petitioning companies was the California & Northern Railroad Company. Diverse views were held by members of the council as to the terms and conditions upon which these several franchises should be granted, plaintiff opposing for a long time the granting of the franchise to the California & Northern Railroad Company, defendant favoring it. Ultimately this franchise was passed, plaintiff and defendant both voting in favor of it, and it developed from the evidence on the trial that it was concerning the action of plaintiff relative to the passage of the ordinance granting this franchise that the article published by defendant of plaintiff had reference. Subsequently, and in the month of June, 1901, plaintiff and defendant were both candidates for re-election as councilmen from their respective wards in the city of Eureka. They were not opposing candidates, but each openly opposed the re-election of the other. It was during this period that the defendant caused to be published in the daily Humboldt *Standard*, a newspaper published in the city of Eureka, an article entitled: "From Councilman Buhne of the First Ward," signed in the same way and containing the following: "Now, Mr. Dauphiny . . . did you have the city's interest at heart when, after fighting a certain franchise, you went to the company seeking it, or its representatives,

and told them that if they would buy groceries from you, you would vote for the franchise? I know you did this and can prove it, and you voted for the franchise." Plaintiff thereupon brought this action for damages grounded upon the portion of the article just quoted, which was set forth in the complaint, accompanied by proper allegations that it was intended by defendant, and understood by the citizens who read the article, to charge that plaintiff had violated his official oath and been guilty of official corruption; that he had solicited personal benefits and had dishonestly accepted them for the purpose of influencing his official action as a member of the council of the city, and had corruptly bartered and legislated away the rights and privileges of said city; with the further allegation that said article so published was false and malicious.

. Defendant answered, admitting the publication, and as a first defense averred that it was true, and, as a second defense: "That at the time the defendant published the alleged defamatory article in the daily Humbolt *Standard,* to wit, on June 15th, 1901, the said plaintiff was the member of the city council from the fourth ward, and this defendant was the member of said city council from the first ward of said city. of Eureka. That at the said time, to wit, June 15th, 1901, both plaintiff and defendant were candidates for the same offices, to wit, as members of the city council of the city of Eureka to be elected at the general election which was held in the said city of Eureka on or about the 16th of June, 1901.

"That defendant wrote and published said article, without malice, of and concerning the character and motives of a candidate for a public office, and for the promotion of public interests and public welfare; that this defendant and all other people, citizens and electors of said city of Eureka, were interested in the character and motives of all candidates for public offices and public trusts, which said candidates were seeking at the hands of said electors."

The case was tried and a verdict rendered by the jury in favor of the defendant, and from the judgment entered thereon, and from an order denying his motion for a new trial, plaintiff appeals.

It is insisted on this appeal that the evidence was insufficient to warrant the verdict against plaintiff and that a new.

trial should have been granted by the lower court on that ground; also, that the court erred in refusing instructions. asked by appellant, and in giving some requested by the respondent.

As a new trial must be had for error as to instructions, it is unnecessary to embarrass future consideration of the case by discussing the sufficiency of the evidence. Different or other evidence may be presented upon the new trial which. must be ordered.

It will be observed that two defenses were interposed by defendant: 1. A justification on the ground that the charge as published was true; 2. That the article published by him,, under the circumstances alleged, constituted a privileged publication under section 47 of the Civil Code, which relieved. him from responsibility to plaintiff.

As the jury, while satisfied that the charge published was untrue, might yet have found it to be privileged under the instructions of the court and based their verdict upon that ground, it becomes important to consider the instructions as. to the law on that subject.

Section 47 of the Civil Code, relating to privileged publications, declares that, "A privileged publication is one made— . . . 3. In a communication, without malice, to a. person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive of the communication innocent, or who is requested by the person interested to give the information."

The defense of privilege which the defendant pleaded and under the evidence introduced by him sought to sustain, was. made and offered with a view of bringing the publication within the operation of subdivision 3 of said section.

As to the evidence, it was conceded that the plaintiff was. a candidate for councilman when this publication was made,. and the defendant testified in his own behalf that he entertained no malice against the plaintiff when he caused the charge to be published; that he published the article, as he said, with the intention of stating things concerning plaintiff which he believed to be true and because he believed the public generally should know what kind of a man the plaintiff was.

This was the only evidence upon which the claim of privilege was based. The theory of defendant, both under his pleading and this evidence, was that because the plaintiff was a candidate for public office, he had a right, as a member of the community, to call the attention of the public to the character and motives of plaintiff as such candidate; that these were matters in which the public had a direct interest; that under these circumstances, as long as the publication was made without actual malice, and in a belief that the charges were true, it was a privileged publication under the subdivision of the section referred to, even though, in fact, the charge was false.

The trial court accepted this theory and claim of the defendant, and upon the assumption that there was evidence which would support a finding by a jury that the publication was privileged, instructed them upon the law as to that subject. The court read to the jury that particular portion of the section of the Civil Code which we have quoted, and having done so immediately proceeded further to instruct as follows:—

"I therefore instruct you that if you find from the evidence in this cause that the alleged publication was made by the defendant without malice, upon a matter in which he was interested to a person or persons who was or were also interested therein or who being interested therein requested him to give such information, then I instruct you that such communication to such person or persons was and is a privileged communication. If you find such to be the fact, then such communication forms no basis for an action, and you will find a verdict for the defendant, unless you can also say that the defendant, in making the publication, was actuated by malicious motives independent of the mere publication of the article in question."

It was error to give this instruction because there was no evidence in the case at all warranting it. All the evidence relied on by the defendant in support of his claim that the publication was privileged had no tendency to support it. There was no evidence under which this instruction was applicable.

It is not the law that a person may assail the character of a candidate for office by charging him with criminal mis-

conduct and then escape liability on the ground that the
charge was made with good intentions and for justifiable
ends without malice, and, under even an honest belief that
the charge is true, and that the occasion of his candidacy
called for its publication. While the privilege of electors
to comment and criticise the acts and conduct of candidates
for public places is very large, this privilege must be con-
fined to statements of the truth. There is no privilege of
publication under the code, or general law, which will exempt
one from responsibility for falsehood. The only justification
one can make who publishes criminal accusations against a
candidate is, when he is called to account, to prove the truth
of the accusation. Libel is no more justifiable when pub-
lished about a candidate for public office than if published
of him on any other occasion. His reputation and character
are as much entitled to protection against false accusation
when he is a candidate for office as at any other time. It
is true that when a person becomes a candidate for a public
office his talents and qualifications for the office to which he
aspires may be freely commented on and criticised by any
member of the community by publication or otherwise. His
faults or his vices, in so far as they may affect his official
character, may be freely discussed. He does not, however,
by becoming a candidate surrender his private character as
a subject for false accusation. That character is only put in
issue as far as his fitness or qualification for the office he seeks
may be affected by it. The public have an interest in know-
ing the truth about those who occupy or seek public office,
but it has no interest in having falsehoods concerning them
disseminated. Hence, publication of the truth, with an
honest intention of giving information to the public of a
candidate, furnishes no ground for complaint. But it is
one thing to publish the truth and quite another to publish
falsehoods; the publication of the truth is justifiable, but
the publication of a falsehood finds no justification what-
ever under the law. While facts may be published, false-
hoods may not, and he who would justify a charge of specific
acts of misconduct against a candidate for office must do so by
proof of the truth of the charge or he does not justify at all.
The law does not permit the character of those seeking po-
sition to be destroyed by libelous charges under any guise

of privileged publication. One can justify the publication of a libel against a candidate for office upon privilege, only by proof that the accusation is true. This is the rule unqualifiedly laid down by this court in *Jarman* v. *Rea*, 137 Cal. 339, [70 Pac. 216], where the subject will be found fully discussed.

It may be said too, while considering this instruction, that had the plaintiff requested it, it would have been the duty of the court to have instructed the jury that the publication made by the defendant, under the circumstances disclosed by the evidence, was not privileged. When the facts and circumstances under which an alleged defamatory publication is made are undisputed, it is a question of law for the court to determine whether it was privileged or not. In the case at bar, the facts and circumstances under which the alleged libelous publication was made, were not disputed. They showed that the publication was not privileged, and had the court been requested, it should have so instructed the jury. (*Carpenter* v. *Ashley*, 148 Cal. 422, [83 Pac. 444].) The fact, however, that no such instruction was asked, did not make it any the less error to give the jury an instruction on the theory that there was evidence upon which they might find the publication was privileged when in fact there was not.

It is also insisted by appellant that the court erred in refusing to instruct the jury, as requested by him, that the article set forth in the complaint was libelous on its face. This point is well taken, as the court should have given that instruction. The article charged the plaintiff with official corruption; with dishonestly agreeing to accept personal benefits as a consideration to influence his official acts upon the matter which was before the legislative body of the city of Eureka of which he was a member. A charge against a public official importing want of integrity or corruption in the discharge of his official duties is actionable of itself. (*Schomberg* v. *Walker*, 132 Cal. 224, [64 Pac. 290]; *Jarman* v. *Rea*, 137 Cal. 339, [70 Pac. 216].)

The court should have likewise given another instruction asked by plaintiff, but which was refused. This instruction was to the effect that where a defendant reiterates the alleged libelous charges in his answer and offers no evidence to prove their truth, and the jury are satisfied that it is made with a

knowledge of its falsity and maliciously and not in good faith, such plea of justification is an aggravation of the wrong done to the plaintiff and may be considered by the jury in assessing damages. This instruction was correct and should have been given. (*Chamberlain* v. *Vance,* 51 Cal. 75; *Westerfield* v. *Scripps,* 119 Cal. 611, [51 Pac. 958].)

It is further insisted by appellant that one of the instructions given at the request of respondent was erroneous. In that instruction, the court told the jury that: "The public are interested in knowing the character of candidates for office; and while no man can willfully destroy the reputation of a candidate by falsehood, yet, if an honest mistake is made in an honest attempt to enlighten the public it must reduce the damages to a minimum if the fault itself is not serious, and there should be no reasonable responsibility where there is no malice."

This instruction was undoubtedly taken from language used by the court in *Baily* v. *Kalamazoo Publishing Co.,* 40 Mich. 251, 257, where the court was discussing the right to criticise the conduct of a candidate for office and the responsibility therefor. At least, we find the language used there, although inaccurately copied in the instruction as to the latter part of it. In that case the words used are: "there should be no *un*reasonable responsibility where there is not *actual* malice," instead of "no reasonable responsibility where there is no malice" as the instruction has it. It is always injudicious to take the language of a court in discussing a proposition of law as correct instruction to be given to a jury. General language is often there used which would be inappropriate as an instruction, and this instruction is an illustration of it. The particularly objectionable part of the instruction is found in the use of the language "it must reduce the damages to a minimum." It is not the province of a trial court to say to a jury "if an honest mistake is made in an honest attempt to enlighten the · public, it must reduce the damages to a minimum." This does not at all follow. Minimum as applied to damages means the least possible amount that may be awarded by a jury, but under the circumstances such as the court referred to in its instruction, the jury might award much more than the minimum as actual damages. This is too clear for comment. Of course, as to the rest of the in-

struction which was incorrectly copied, it is hardly worth discussing it, on account of the emasculated condition in which it was given. There could be, however, no necessity or propriety in giving it if it had been correctly copied. What the responsibility should be is a question purely for the jury, to be determined by them under instructions explicitly declaring the rule under which it should be ascertained. There is responsibility for substantive damages—damages for loss of reputation and so forth—even where there is no actual malice in the mind of the accuser when he makes the defamatory charge. There is no necessity on a new trial for giving this instruction at all, even if modified by omitting the objectionable features we have pointed out. As it stood, it only had application to the matter of mitigation of damages, and the rule in that respect, as laid down in other instructions, seems to be full enough, or, at least, is not challenged by appellant as being incorrect in law.

Some alleged errors in rulings upon the admissibility of evidence are claimed to have been committed by the court. The transcript embodies a bill of exceptions containing all the evidence set out by question and answer, and is quite lengthy. But the transcript itself does not contain any index of where the testimony of any witness may be found. Neither in the briefs of counsel for appellant is it indicated where, nor in what part of the bill, the questions objected to, and the rulings of the court upon them, may be discovered. He contents himself with setting forth in a page or so in his brief a lot of questions which he claims the court erred in overruling his objections to. We are not even enlightened on the subject as to whether the questions were answered or not. It is the duty of counsel to point out specifically where alleged errors, upon which they rely, may be found in the transcript, and if counsel do not see fit to do so, it will be assumed that they have not deemed them of sufficient merit or importance to undertake the task. In any event, under such circumstances, this court will not assume the burden of doing it.

The judgment and order appealed from are reversed, and the cause remanded for a new trial.

Henshaw, J., and McFarland, J., concurred.