[Civ. No. 548. Second Appellate District.—December 2, 1908.]

E. T. TANNER, Respondent, v. A. B. EMBREE, C. L. EMERSON et al., Appellants.

LIBEL—FALSE CHARGES AGAINST PUBLIC OFFICER ACTIONABLE PER SE— WANT OF INTEGRITY—CORRUPTION IN OFFICE—OBLOQUY.—Publications concerning the plaintiff as a public officer, imputing to him a want of integrity or corruption in his official duties, if false in fact and exposing him to hatred, contempt and obloquy, are actionable *per se.*

ID.—PRIVILEGED COMMUNICATION—QUESTION OF LAW.—When the facts and circumstances attending the publication are undisputed, it is a question of law for the court whether it was privileged or not; and its conclusion of law on that subject loses none of its force by being incorporated in the findings of fact.

ID.—GOOD FAITH OF FALSE PUBLICATION IMMATERIAL.—The fact that the publications were actually made with good intentions, and for justifiable ends, without malice, does not render the same privileged, if false in fact.

ID.—CHARGE OF MISCONDUCT AGAINST CANDIDATE FOR PUBLIC OFFICE— JUSTIFICATION.—A charge of misconduct against a public officer who is a candidate for re-election can only be justified by proving its truth. Injurious falsehoods may not be published without liability therefor.

9 Cal. App.—31

APPEAL from a judgment of the Superior Court of Riverside County, and from an order denying a new trial. Benjamin F. Bledsoe, Judge presiding.

The facts are stated in the opinion of the court.

Collier & Carnahan, and John H. Dunn, for Appellants.

Lafayette Gill, and W. G. Irving, for Respondent.

ALLEN, P. J.—Appeal by defendants from a judgment in favor of plaintiff, and from an order denying a new trial.

The action was sought to be maintained by plaintiff on account of certain false and libelous publications made, or caused to be made, by defendants of and concerning plaintiff. The trial court finds, and there is evidence warranting the same, that plaintiff at and before the publication of the matter complained of was a duly appointed and qualified constable of the judicial township of San Jacinto, Riverside county, and was the president of the board of trustees of the city of San Jacinto, and was at all of said times a candidate for re-election to the office of constable of said judicial township; that the defendants in an issue of a certain newspaper, called the "San Jacinto Register," printed and published by them, on Thursday, the first day of November, 1906, printed and published of and concerning plaintiff the following, among other things: "This man [referring to plaintiff], together with those trustees who appointed him, have winked at the prostitute dens and the gambling dens, and the street brawls, and have had nothing to say, or nothing to do; but the moment the matter is agitated by the citizens of our town, they rise up with indignation; they stand in the way of the movement and line themselves with the law-breaking element of our town. Now, as to this man, Tanner, . . . it so happens that he holds an office of great importance just now. He is constable for this township. He says that it is absolutely useless to convict anybody of illegally selling liquor in this town, . . . and he has strong grounds for his statement, for he is one of the peace officers that have the matter largely in their own hands. McKim is the other, and we all know what he is. It rests with one or the other of these two men to decide the character of any jury that may be selected to try violations of the law. They are both sworn

sympathizers against the movement to punish the law-break-
ers of our town. Small wonder that Tanner says we can't
convict anybody of law-breaking when he or McKim select
the men from whom the jury must be chosen.''

The court further finds that said defendants, in an issue
of said newspaper, printed and published on Monday, the
fifth day of November, published of and concerning the plain-
tiff the following: ''Have you Tannerytis? . . . There now
arises two distinct types of the disease. . . . He [meaning one
afflicted with Tannerytis] knows a prostitute den is a prosti-
tute den. Selling liquor without a license he realizes is
breaking the law. . . . But, alas, this black type of the disease
has so fouled his mind that he now not only acquiesces in the
breaking of the law, but is willing to help drag it down. He
[meaning one afflicted with Tannerytis] becomes a common
drunk and a gambler.''

These excerpts are given to show the general tenor of the
publications. The court finds that each and all of the mat-
ters charged were false in fact. Such matters published of
and concerning the plaintiff are open to no construction other
than as charges against a public officer, imputing want of
integrity, or corruption in the discharge of his official duties.
Such publications, if false in fact, are actionable of them-
selves (*Schomberg* v. *Walker,* 132 Cal. 224, [64 Pac. 290] ;
*Jarman* v. *Rea,* 137 Cal. 339, [70 Pac. 216] ) ; and the whole
purport of such publications was to expose, and did expose,
plaintiff to hatred, contempt and obloquy.

It is appellants' contention that such publications were
privileged, in that they were criticisms and comments upon
the qualifications of the plaintiff as a public officer and as a
candidate for an office of trust and confidence before the peo-
ple, appearing in a newspaper, the management and control
of the policy of which was undertaken by defendants merely
to purify politics and improve the public service; and, fur-
ther, that the finding of the court in its findings of fact that
such publications were not privileged was an insufficient find-
ing. It is sufficient, with reference to this last suggestion, to
say, ''when the facts and circumstances under which an al-
leged defamatory publication is made are undisputed, it is a
question of law for the court to determine whether it was
privileged or not'' (*Dauphiny* v. *Buhne,* 153 Cal. 757, [96
Pac. 880] ) ; and such conclusion of law loses none of its

force by being incorporated in the findings of fact. That the publications were actually made with good intentions and for justifiable ends without malice, and under honest belief of their truth, does not render the same privileged, provided the same are false in fact. (*Dauphiny* v. *Buhne,* 153 Cal. 757, [96 Pac. 880].) In measuring the right to discuss in public print the character and conduct of one who is a public officer, or a candidate for public office, all persons stand upon an equal plane. It matters not that one causing such publication may be in the publishing business as a means of livelihood, or for a less selfish purpose, while another committing the same act may be engaged in some other pursuit. Neither may print or publish any matter which falsely charges such person so in office, or a candidate, with the commission of a crime without incurring a liability for the injury occasioned thereby. The law tolerates public criticism of such officer or candidate in so far as his moral delinquencies so made public may affect his official character or fitness to assume the public duties to which he aspires, upon the theory that the general public is entitled to know the truth that they may intelligently exercise the elective franchise, or, in the case of a public officer, be advised of the manner in which those in office are discharging the duties of their trust. But in assuming to discuss in print the private character of such candidate or officer one may not publish any matter false in fact. "While facts may be published, falsehoods may not, and he who would justify a charge of specific acts of misconduct against a candidate for office must do so by proof of the truth of the charge or he does not justify at all." (*Dauphiny* v. *Buhne,* 153 Cal. 757, [96 Pac. 880].)

There is no merit in the contention that the nonsuit should have been granted. The preliminary proof upon the part of plaintiff was sufficient to make a *prima facie* case, and warranted the denial of such motion.

We find no error in the record, and the judgment and order are affirmed.

Shaw, J., and Taggart, J., concurred.