[Civ. No. 1341.  Third Appellate District.—June 11, 1915.]

## JAMES M. ADAMS, Respondent, v. W. H. CAMERON, Appellant.

LIBEL—CHARGE OF INTOXICATION AGAINST RAILROAD CONDUCTOR—USE OF VULGAR LANGUAGE TOWARD PASSENGERS—PUBLICATION LIBELOUS PER SE—NONSUIT.—A letter written by a passenger on a railroad train to the general passenger agent of the railroad company, charging the train conductor with being intoxicated while on duty and so much under the influence of liquor as to cause him to use loud and vulgar language toward passengers on the train, and which makes reference to two former occasions of similar exhibitions of coarse and disagreeable deportment on the part of such conductor while on duty, is libelous *per se,* and in an action for damages for such libel, a motion for nonsuit made at the close of the plaintiff's evidence, based upon the ground of the absence of proof of the falsity of the charge, is properly denied.

ID.—EVIDENCE—FALSITY OF PUBLICATION.—When language is actionable and it does not appear that it is privileged, it is presumed to· be both false and malicious and no other evidence of falsehood or malice is necessary than the publication itself.

ID.—EXPLANATION OF CONDUCT TO RAILROAD ·OFFICIAL—TESTIMONY OF PLAINTIFF.—In such an action it is not error to permit the plaintiff to testify as to what he said to the railroad official to whom he was directed to report, in reply to the statement by such official of the charge reported against the witness, wherein the latter explained how and why he came to take a drink of intoxicating liquor on the occasion in question.

ID.—EFFORTS TO OBTAIN EMPLOYMENT WITH OTHER COMPANIES—COMPETENCY OF TESTIMONY OF PLAINTIFF.—It is not error to allow the plaintiff to testify as to what he did to obtain employment from other railroad companies after his discharge· on account of said libel, instead of making proof thereof by the parties to whom he made application for employment, as the purpose of such testimony was to show an honest effort to obtain employment and to meet

27 Cal. App.—40

any claim of the defendant that plaintiff might have at least reduced the damage by going to work elsewhere.

ID.—CUSTOM OF RAILROAD COMPANIES—AGE LIMIT OF EMPLOYMENT.— It is not error in such an action to admit evidence of the custom of railroad companies in this state as to the employment of persons of certain ages, and as to their refusal to employ persons dismissed by other companies for cause.

ID.—NONINTOXICATION OF PLAINTIFF—PERSONAL OBSERVATION—COMPETENT TESTIMONY.—It is not error in such an action to permit the plaintiff in rebuttal to give in evidence the opinions of witnesses that they had never seen the plaintiff under the influence of liquor, or witnessed any coarse or disagreeable deportment on his part.

ID.—DEFAMATORY LETTER—PRIVILEGED CHARACTER OF—QUESTION FOR JURY.—It is not error in such action to refuse to rule that the libelous letter was a privileged communication, based upon the defendant's knowledge of the notice posted in the cars of the railroad company inviting passengers to report discourteous treatment or misconduct on the part of employees, and of the writing of the letter in obedience thereto, as one cannot escape responsibility for a falsehood under the claim of privilege.

ID.—PRIVILEGED CHARACTER OF COMMUNICATION—QUESTION FOR JURY.— Where the undisputed facts establish the privileged character of the alleged libelous publication, it then becomes a question of law; but where the facts are disputed or the question of privilege is one of mixed law and fact, the question is for the jury.

ID.—INSTRUCTION—LIBELOUS MATTER—WHEN PRIVILEGED.—An instruction that if the jury should find that the alleged publication was substantially true and was made by the defendant upon a matter in which he was interested to a person who was, or persons who were, also interested therein, or who being interested therein requested him to give such information, and that said communication was made by defendant in honest good faith, and without malice, their verdict must be for the defendant, is a correct statement of law.

ID.—VERDICT SUPPORTED BY EVIDENCE.—In this action it is *held* that the verdict is supported by the evidence and sufficient to justify the implied finding of the jury that the defendant's letter was the cause of plaintiff's discharge.

ID.—DAMAGES—INJURY TO FEELING AND REPUTATION.—In such an action the plaintiff is not limited in his recovery of damages to the loss of wages alone, but is entitled to recover as well for injury to feeling and reputation.

APPEAL from a judgment of the Superior Court of Napa County and from an order denying a new trial. Henry C. Gesford, Judge.

The facts are stated in the opinion of the court.

F. E. Johnston, H. L. Johnston, and L. E. Johnston, for Appellant.

Theodore A. Bell, for Respondent.

CHIPMAN, P. J.—Action for libel. It is alleged, in plaintiff's complaint, that, from August, 1891, to September, 1895, plaintiff was employed as brakeman in the service of the Southern Pacific Company and from September, 1895, to December 31, 1910, he was in its service as conductor upon the trains of said railroad company which, among other places, were, in 1910, being regularly operated between South Vallejo and Suisun; that, on December 31, 1910, plaintiff was in said service as train conductor between said last named points and was receiving as compensation the sum of $184.50 per month; that, on December 1, 1910, defendant wrote, signed, and published and caused to be delivered to and read by Charles S. Fee, then the general passenger agent of said railroad company, a letter containing false and defamatory matter concerning plaintiff as follows, to wit:

"Los Banos, Cal., December 1, 1910.

"Mr. CHARLES S. FEE, San Francisco. Dear Sir: Sunday afternoon on train from Napa Junction to Suisun a passenger was spoken to in very rough language by Conductor Adams, simply because he had by mistake gotten on that train, expecting to go to Santa Rosa. The passenger was a well dressed sober man, evidently a foreigner. A moment later in reply to another passenger's speaking about the heat of the car Mr. Adams used loud and very vulgar language in referring to the trainmen's reasons for having it hot. I observed that the reasons for Mr. Adam's language in both instances was that he seemed to be much under the influence of liquor. On two former occasions within the past six months I have noticed similar exhibitions of coarse and disagreeable deportment on the part of Mr. Adams and each time that he is under the influence of liquor. On other occasions I have had reason to think Mr. Adams a very decent, kindly man, and I would therefore be very sorry to have him hardly dealt with for the faults mentioned, but think that a caution against drink during hours of duty at least would be

of value to him, as well as to your road and the public. You may show this to him if you wish to do so.

"Very Respectfully,

"W. H. Cameron,

"Napa, Cal."

That said letter, after the delivery thereof to said Fee, was by him exhibited to sundry persons then employed by said railroad company and thereafter, on December 31, 1910, "this plaintiff by reason of the false and defamatory matters set forth in said letter, was discharged from the employ of said railroad company on the ground that he was guilty of conduct unbecoming a conductor, whereby the plaintiff has lost at all times since December 31, 1910, the said sum of one hundred and eighty-four and 50/100 dollars per month, which otherwise would have accrued to him, and the plaintiff will continue to lose said sum each month because of said discharge; that plaintiff has no trade or occupation other than that of a railroad brakeman and conductor, and that by reason of his said discharge . . . it will be impossible for this plaintiff to secure re-employment with said railroad company or employment with any other railroad company in this state"; that the railroad companies which operate in this state maintain a system of exchange references by which each company is notified of the causes for the discharge of an employee of any other railroad company and that when a conductor has been discharged because of conduct unbecoming a conductor no other railroad company will employ such discharged person in any capacity; that plaintiff is 47 years of age and that "a rule, custom and practice prevails among railroad companies operating in the state of California, and by which they are controlled and guided in the employment of servants, not to employ any person either as brakeman or conductor who has passed the age of forty-five years; and that by reason of the premises and the said acts and words of the defendant, this plaintiff has been permanently deprived of the income and earnings which would otherwise accrue to him from his employment as a railroad conductor in said state of California, to plaintiff's damage in the sum of $15,000.00"; plaintiff also alleges "that in addition to the special injury and damage . . . plaintiff has been injured and damaged in his good name, reputation and feelings, by the said acts

and words of the defendant as aforesaid, in the sum of $15,000.00."

Defendant almits the publication of said letter but denies that it contained false or defamatory matter concerning plaintiff; admits that the conductor alluded to in said letter was the plaintiff but denies that the matters therein stated "were or are false or untrue" or that at the time defendant wrote said letter he knew that said matters were false or untrue; defendant also denies separately the averments of the complaint relating to plaintiff's alleged service in said railroad company, the facts alleged as to his discharge and its present and future effect upon his earning capacity, the alleged system of the exchanging of references and of the alleged rule of refusal of railroad companies to employ discharged employees of other roads or because of having reached the age of 45 years or any other age and denies that plaintiff has been permanently or otherwise injured or deprived of employment by reason of his said alleged discharge.   Further answering, defendant avers that "all the matters and things concerning the plaintiff herein, contained in" said letter "were and are true."   Further answering, defendant alleges that "he, as a party interested, wrote to said Charles S. Fee as the general passenger agent of said Southern Pacific Company, a party also interested, advising him of the uncivil and discourteous conduct of Conducter Adams, . . . on the afternoon of the twenty-seventh day of November, 1910"; that defendant, when he wrote said letter, "had reason to believe, and actually did believe, that said plaintiff, as the conductor on said train on said twenty-seventh day of November, 1910," did use the language and do the acts set forth in said letter and was under the influence of liquor as therein stated and that defendant wrote said letter in good faith "and in the honest belief that each and every statement contained in said letter was true"; that said railroad company at the times mentioned had a notice posted in the cars of said train requesting that any uncivil or discourteous treatment suffered by any patron of said company, by reason of any acts or conduct of its servants, be reported to said company, and that defendant wrote said letter in obedience to said request and in the honest belief that all he wrote was true and without any malice or ill-will toward plaintiff.

The cause was tried by a jury and, after instructions had been given and at defendant's request, the court directed the jury to answer the following interrogatories proposed by defendant, to wit: "1. In the writing and publication of the letter in question was the defendant actuated by actual malice toward plaintiff? 2. In the writing and publication of said letter was defendant acting in good faith without malice and in the honest belief by him that the statements therein contained were true?"

The jury returned a verdict for plaintiff in the sum of five thousand dollars, and answered the interrogatories as follows: 1. "Yes." 2. "No." Defendant appeals from the judgment on the verdict and from the order denying his motion for a new trial.

Plaintiff testified to his service with the Southern Pacific Company as alleged in the complaint and that he was dismissed from the company's service, December 31, 1910, and was receiving as wages at that time $184.50 per month; that he was, at the time of the trial (November 14, 1912), and had been, since September 16, 1912, employed by the state on the belt railroad and was receiving one hundred dollars per month for his services. He testified that, returning, on December 31, 1910, to South Vallejo, on his regular run, he was told to report to Mr. Ketcham, assistant superintendent of the western division at Oakland Pier; he complied and went to see Mr. Ketcham, January 3, 1911. "I says, 'What is the trouble?' 'Well,' he says, 'we have decided to dispense with your services.' I says, 'What for?' 'Well,' he says, 'you have been accused of using profane language, treating a well-dressed foreigner as a culprit and being in a drunken condition on the train.' I told him the report was false and I was not in the habit of using profane language under any circumstances and I was not a drinking man, very seldom took a drink unless I figured it was for medical purposes; and as far as treating a well-dressed foreigner or anybody else as a culprit was foreign to my nature at all stages of the game. 'Well,' he says, 'that is my decision—Mr. Whitney's orders.' Mr. Whitney is the superintendent of the western division of the Southern Pacific Company." He was asked to give his reply when told in substance the charges against him. Defendant objected as immaterial, irrelavant, and incompetent. The court overruled the objection and

defendant excepted. He stated nothing further of conse-
quence in his conversation with Ketcham but was told that
he could see Mr. Whitney, which he did a week later at his
office at Oakland Pier. He testified that Whitney told him
of the charges the same as Ketcham had stated them. It
appeared that Mr. Campbell, trainmaster, spoke to plaintiff
of the charges and, on December 31, 1910, plaintiff wrote
Campbell in reply to what was said of his conduct on Novem-
ber 27, 1910. As to what occurred in his interview with
Whitney he testified: "In the letter or statement I made,
which was addressed to Mr. Campbell, I acknowledged tak-
ing on that day a drink of whiskey and glycerine for a cold
I had. I took this drink at my home in the morning when
I first got up. I discussed this matter with Mr. Whitney.
He says, 'Why didn't you lay off?' 'Well,' I says, 'I was
in condition to work with the exception of a very bad cold,
a sore throat and hoarseness.' He said, 'Why didn't you
take something to kill the fumes of the liquor on your breath?'
'Well,' I says, 'I took very little and used it as a gargle and
for medical purposes and I didn't figure that it would be
offensive to anybody.' He says, 'Well, I can't do anything
for you. You are discharged on account of that report.'"
He testified that the name of the informant was refused and
was not given to him and he did not learn who he was until
about March 1, 1911. He testified that he was told by both
Ketcham and Whitney that the reported misconduct oc-
curred on the afternoon of November 27, 1910. In his letter
to Campbell this same date is given as the time when he was
reported to have been guilty of misconduct. He was asked
if he made endeavors to secure employment from other rail-
road companies and if so what he did. Defendant's objec-
tion on the ground of irrelevancy and immateriality was
overruled and plaintiff testified to having applied to the
Yosemite Valley road, the Western Pacific, the Santa Fe,
and the Ocean Shore, without success, and by each company
was asked to show his clearance from the Southern Pacific
Company but as it was in his lawyer's office he told "them
about the substance of it and about the letter reporting"
him. The clearance was offered in evidence. It certifies to
his personal record with the company, description, capacity
in which he has worked for the company and length of time.
The date of leaving service is given, December 31, 1910, and

the cause: "Dismissed for conduct unbecoming a conductor," and is signed, "W. A. Whitney, Superintendent Western Division." He also testified to having applied to the Northern Electric. He testified: "The officials did not like the reason of my dismissal from the Southern Pacific. I tried to get work with the street car company in Oakland, but when they learned why I was dismissed from the Southern Pacific they said 'nothing doing.'" He testified that he answered an advertisement in the Examiner for conductor of a lumber road and that when he showed the clearance from the Southern Pacific Company and Mr. Cameron's letter he was told he could not be accepted. Over objection as irrelevant and immaterial he testified to a custom or rule prevailing among the railroad companies of this state that they will not employ a new man in any capacity who is over 35 years of age "and if a man is 45 years of age he cannot get employment no matter what his railroad experience." He also testified, over like objection, to a prevailing custom as to an exchange system of references: "If I had been working for the Santa Fe and applied to the Southern Pacific for a position the first thing they would want is my clearance. If that clearance was not a good clean record it debarred you from their service. If your clearance is lost you refer them to your former employer. The railroads have a regular system of referring back, they keep the personal record of every employee."

In his cross-examination his explanatory letter to Campbell was introduced by defendant in which he admitted having taken a drink of whiskey and glycerine at his home on the morning of November 27, 1910, and in his further examination explained that he had a bad cold and had been advised by his physician to use this mixture and he admitted having taken another drink at his home at about 11 o'clock, which was two or three hours before the occurrence on the train referred to in the Cameron letter. He testified that nothing was said to him by the officials of the Southern Pacific Company about his having been under the influence of liquor on other occasions than the twenty-seventh day of November and that he knew of no other charge made by the company.

Witness H. M. Philbrick testified that he was a railroad conductor and working for the Southern Pacific and was

chairman of the local board of adjustment of the Order of Railway Conductors and in that capacity called upon Superintendent Whitney to effect an adjustment of the plaintiff's troubles and secure his reinstatement if possible. He testified: "Of course, we did not know it was the Cameron letter at that time. That developed later, you understand, but it was the charge that the Cameron letter charged. That was the only thing up with Mr. Whitney." He was refused the name of the company's informant and was told that plaintiff could not be reinstated. He also, over defendant's objection, testified as to the age limit referred to by plaintiff and also the keeping of a personal record and the exchanging of references concerning men employed by the railroads.

The foregoing presents substantially the evidence in chief introduced by plaintiff.

1. At its conclusion, defendant moved for a nonsuit "based upon the ground that there was no proof as to the falsity of the charges, or any of them contained in alleged libelous letter." There was at that stage of the trial no very direct proof given although evidence of the fact was admitted in rebuttal. The plaintiff, however, in his examination, did state that the charges in the Cameron letter were untrue. Defendant's contention is that in an action for libel the falsity of the publication must appear either by presumption or proof; citing *Cranfill* v. *Hayden,* 97 Tex. 544, [80 S. W. 609] : that there are no presumptions in this state other than those expressly declared by law; citing *Davis* v. *Hearst,* 160 Cal. 143, [116 Pac. 530] : that there is no statute declaring that falsity is presumed where a charge made "has a tendency to injure one in his occupation." Hence the claim that it was error to deny the motion.

"Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." (Civ. Code, sec. 45.) It seems clear to us that the charges made by defendant were libelous *per se* and were actionable, and we think it a well-established rule that in such case the burden was put upon defendant to prove the truth of the charges and no burden rested upon plaintiff to prove their falsity. The supreme court said, in *Dixon* v. *Allen,* 69 Cal.

529, [11 Pac. 180] ; "When language is actionable and it does not appear that it is privileged, it is presumed to be both false and malicious, and no other evidence of falsehood or malice is necessary than the publication itself" and a nonsuit in that case was held properly denied "because the evidence of plaintiff proved *prima facie* that the publication was false and malicious." (See *Tonini* v. *Cevasco,* 114 Cal. 266, [46 Pac. 103].) In *Schomberg* v. *Walker,* 132 Cal. 224, [64 Pac. 290], it was held that "the burden of proving the truth of the libel, or the privilege claimed, lies upon the defendant, as at common law." To charge a railroad conductor while on duty with being so under the influence of liquor as to cause him to use loud and vulgar language toward passengers, would certainly be calculated to injure him in his occupation. No railroad company of any standing would tolerate such conduct or retain in its service a conductor who would thus deport himself in discharging his duties toward the traveling public. Plaintiff was not directly asked the question whether the Cameron charges were true or false. He might have anticipated the issue but he was not obliged to do so. The court said, in *Davis* v. *Hearst,* 160 Cal. 143, [116 Pac. 530] ; "While the falsity of defamatory matter will be presumed, still it is competent for the plaintiff, if he so desires, to offer affirmative evidence showing that falsity."

2. Error is claimed in overruling the objection to plaintiff's stating what he said to Ketcham when he reported to him as directed. He stated in substance the conversation before any objection was made. Besides, in giving the conversation in greater detail, during which he explained how and why he came to take a drink of whiskey and glycerine and made what defense he could, he was but seeking to justify himself and effect reinstatement. The objection urged is that it was self-serving and tended "to prejudice the officials of the railroad company in the eyes of the jury." It seems to us that this testimony bore upon the question of plaintiff's discharge and its connection with the charges made by Cameron.

3. With more seriousness, defendant urges error in allowing plaintiff to show what he did to obtain employment from other railroad companies. It is true, as claimed by defendant, "that one who utters a slander is not responsible, either as on a distinct cause of action, or by way of aggravation of damages of the original slander, for its voluntary and un-

justifiable repetition, without his authority or request, by others over whom he has no control, and who thereby make themselves liable to the person slandered.'' (Newell on Defamation, p. 243, sec. 19.) It is further claimed that plaintiff was thus permitted to manufacture evidence in his own behalf after the alleged libelous act was complete; that the testimony should have come from the parties to whom plaintiff made application. The purpose of offering this evidence was to show an honest effort to obtain employment and meet any claim by defendant that plaintiff might at least have reduced the damage by going to work elsewhere, which would likely have been urged had he failed to show any effort to seek work. (See *Westwater* v. *Grace Church,* 140 Cal. 341, [73 Pac. 1055].) In showing his clearance, thus informing the companies to which he applied that he had been dismissed for conduct unbecoming a conductor, he was but meeting the requirement of these companies. It was not for the purpose of publishing the libelous letter. The parties applied to could have been called as witnesses to show the plaintiff had applied for work but we think plaintiff was a competent witness to the fact.

4. In this same connection, error is urged in permitting evidence of custom among railroads as to employment. The objection lies to the evidence of custom in the employment of persons of certain ages and the non-employment or refusal to employ persons dismissed for cause. The rule for estimating the damages in this case is found in section 3333 of the Civil Code, for there was no charge of fraud or malice or claim for vindictive or exemplary damages. The code rule is thus stated: ''For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.''

Defendant puts his point interrogatively as follows: ''How can the fact, if it be a fact, that the railroad companies in this state have established a rule not to employ any one over the age of 45 years, or how can the fact, if it be a fact, that the railroad companies in this state refused to employ plaintiff because of his wrongful discharge by the Southern Pacific Company, be said to be the *proximate cause* of the alleged

libelous letter by this plaintiff?" *Friend & Terry Lumber Co.* v. *Miller,* 67 Cal. 464, [8 Pac. 40], and *Martin* v. *Deetz,* 102 Cal. 55, [41 Am. St. Rep. 151, 36 Pac. 368], are cited to the proposition that "remote results, produced by inter- mediate sequences of causes, are beyond the reach of any just and practical rule of damages." To sum up the matter, it is urged that to sustain the ruling "it will have to be as- sumed that because plaintiff was wrongfully discharged by the Southern Pacific Company, that defendant is responsible for the rules of all the railroad companies in this state, and this independent action notwithstanding he did not know of the existence of any such rule, and had nothing whatever to do with their enforcement." Plaintiff had claimed in his complaint and showed by evidence that he had passed what may be called the age limit for employment as a con- ductor and that his age precluded him from obtaining like employment with other railroad companies. He claimed special damages in his complaint.

As already suggested, it was plaintiff's right to show that he could not get employment by another railroad company to avoid a possible presumption that, so far as his occupation concerned him, he had suffered no damages. We cannot see that he was precluded from showing that he was prevented from obtaining work by the act of defendant which caused his discharge, any more than he would have been precluded from showing some physical disability caused by defendant's act. We have examined the cases cited by plaintiff and while we do not doubt the soundness of the principle on which they rest, the facts there shown presented circumstances clearly too remote, speculative, and contingent to admit of their con- stituting a proximate cause of the damages claimed. No claim is here made of the injury resulting from the wrong- ful act of third parties—the companies refusing to employ plaintiff. As for defendant not knowing the rules or cus- toms referred to, the section of the code expressly provides that the damages "is the amount which will compensate for all the detriment proximately caused thereby (the injury), whether it could have been anticipated or not." The com- plaint was not framed on the theory of defendant's responsi- bility for a breach of these rules of railroad companies, but because of the libel he was discharged and because the grounds of his discharge shut him off from obtaining em-

ployment in his chosen occupation. It was only through the defendant's wrong that the rules were brought into play, for the age limit had no application to persons still in employment. We cannot look upon defendant's conduct otherwise than as operating proximately to plaintiff's damage.

5. Error is claimed because plaintiff was permitted in rebuttal to give in evidence the opinions of witnesses that they had never seen plaintiff under the influence of liquor or witnessed any coarse or disagreeable deportment on his part. At least two of these witnesses were on the train at the time of the alleged misconduct and one of them in the smoking car where it occurred. Both of these witnesses talked with plaintiff and discovered no evidence of his being under the influence of liquor. The one who was in the smoking car testified to facts directly contradictory of the charges made by defendant. The station agent at South Vallejo testified to his close personal contact with plaintiff on the day mentioned by defendant and saw him when he went on duty and particularly when he made his reports. His testimony was that he discovered no indication of plaintiff's having used liquor on that day. These witnesses clearly were competent and their testimony was relevant. Plaintiff himself testified that the charges were untrue. Several witnesses who were frequent patrons of the road, some of them daily passengers on commutation tickets, were permitted to testify to plaintiff's sobriety and general courteous treatment of passengers for the six months prior to November 27, 1910. Plaintiff contends that the evidence was admissible to controvert the charge made by defendant that he had observed "on two former occasions within the past six months" plaintiff's coarse and disagreeable deportment and his being then under the influence of liquor. These witnesses were examined as to what they observed during this period. Their opinion was not sought but what they actually saw in frequent meetings of plaintiff when on duty. They were not called as character or opinion witnesses. Defendant's charge was indefinite as to the day he observed plaintiff's conduct. The evidence may not have been very persuasive but it furnished the only available means open to plaintiff to meet the charge.

6. Error is assigned because the court refused to rule that the Cameron letter was a privileged communication. It appeared that notice was posted in the cars inviting passengers

to report discourteous treatment or misconduct on the part of employees; that defendant knew of this notice and wrote the letter in obedience to it.    Hence the claim of privilege.

Doubtless, where the undisputed facts establish the privileged character of the alleged libelous publication, it then becomes a question of law.    But where the facts are disputed or the question of privilege is one of mixed fact and law, the question is for the jury.    (*Carpenter* v. *Ashley,* 148 Cal. 422, 423, [7 Ann. Cas. 601, 83 Pac. 444]; Townshend on Libel, 3d ed., p. 332.)    Besides, one cannot escape responsibility for a falsehood under the claim of privilege.    (*Dauphiny* v. *Buhne,* 153 Cal. 757, [126 Am. St. Rep. 136, 96 Pac. 880]; *Jarman* v. *Rea,* 137 Cal. 339, [70 Pac. 216]; *Tanner* v. *Embree,* 9 Cal. App. 481, [99 Pac. 547].)

Defendant asked an instruction that the letter in question was a privileged publication.    The court refused but instructed the jury quite fully and correctly, we think, as to what constituted a privileged publication and under what circumstances the law will pronounce a communication privileged.·    The question was for the jury to determine under the facts and law as explained by the court.

7. Defendant's requested instructions marked A, B, C, D, and E were given, as modified by the court, numbered respectively 5, 6, 11, 12, and 13.    It is stated in defendant's brief that the modification "consisted in injecting into each a qualification to the effect that before libelous matter can be privileged it must appear that it was and is substantially true."    Instruction numbered 5 will sufficiently show whether there is merit in defendant's point.    It is as follows:

"Section 47 of the Civil Code, relating to privileged communications, declares that 'A privileged publication is one made—Subd. 3.    In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive of the communication innocent, or who is requested by the person interested to give the information.'    I therefore instruct you that if you find from the evidence in this case that the alleged publication was substantially true and was made by the defendant upon a matter in which he was interested to a person who was, or persons who were, also interested therein, or who being interested therein requested him to

give such information, and that said communication was made by defendant in good faith, without malice and in the honest belief that the statements therein contained were true, then I instruct you that your verdict must be for the defendant.''

Defendant stated in his letter facts of his personal observation and knowledge. He justified by alleging that they were true. The instruction placed the issue of the truth or falsity of the publication before the jury with the direction that if the publication was found to have been substantially true and was made without malice and in the honest belief that it was true, their verdict should be for defendant. We think this is a correct statement of the law. A person may not willfully utter a libelous publication falsely assailing the character of another and shield himself under the claim of privilege. The instruction as offered omitted all question of the truth or falsity of the publication. As was said by the trial court in his charge to the jury, in a recent somewhat celebrated libel case: ''The whole law concerning libel is woven around the question of whether the charge made is true or not.'' It may not be overlooked that at defendant's request the question of malice and honest belief in the truth of his publication was answered against him. But if the publication was false we cannot see that honest belief in its truth or malice in its utterance should shield defendant.

8. Finally, the sufficiency of the evidence to support the verdict is challenged. It is contended that the only ground upon which the verdict can be sustained is that the jury were influenced by prejudice and passion. Among the implied findings which it is claimed were necessary to the verdict and were unsupported some will be noticed. It is said that the jury must have found that plaintiff was discharged by reason of the letter written by defendant. We cannot give space to a recital of all the facts supporting such finding. Whitney, it is true, testified that he discharged him and that the letter had nothing to do with it for he did not know of its existence when the order was made. There is abundant evidence tending to show that the charge made by defendant was the matter under investigation and that no other report or charge was called to plaintiff's attention or appeared to be under investigation. When plaintiff reported to Ketcham, assistant superintendent, on January 3, 1911, as he was told

to do on December 31, 1910, Ketcham said to him: "We have decided to dispense with your services" and Whitney testified that Ketcham had authority to investigate charges against plaintiff and dismiss him. Trainmaster Campbell testified that he received a copy of the Cameron letter from Ketcham with directions to make an investigation. The case was in Ketcham's hands and plaintiff testified that Ketcham took up the Cameron charges with plaintiff and then discharged him. The written report of the discharge shows that the date of the misconduct was November 27, 1910, the date named in defendant's letter and the date to which the evidence was directed. We think the jury were justified in making the finding complained of. It is claimed the evidence did not support the finding that the charges contained in the letter were not substantially true. Defendant testified that they were true. Plaintiff testified to the contrary and his explanaion that he drank whiskey and glycerine twice on that day on medical advice was corroborated by the testimony of his wife; his testimony that he was not under the influence of liquor was also corroborated. It was for the jury to determine the issue. As to the alleged use of "loud and vulgar language in referring to the trainmen's reason for having the car hot," plaintiff in his testimony denied that he had used loud or vulgar language and he also denied that he used "rough language toward a passenger simply because he had by mistake gotten on that train." His explanation of the roughness of his voice and the incident of the passenger who had mistaken his train was not such as would have warranted the jury in finding that defendant's charges were true. We think the evidence was sufficient to justify the finding that plaintiff was discharged by reason of the letter. We have already said sufficient upon that point.

It is urged that Ketcham and Whitney both told him, as plaintiff admitted, that he was "accused of using profane language, treating a well-dressed foreigner as a culprit, and being in a drunken condition on the train" and that Whitney told him, "You are discharged on account of that report." It is urged that the phraseology here used shows that his discharge was not on account of defendant's letter. The evidence was that no report or charge other than the Cameron letter was under investigation. The evidence, we think, was sufficient to justify the jury in finding that defendant's let-

ter caused plaintiff's discharge and that the cause for his discharge as given by Ketcham and Whitney had reference to this letter.

No inference can reasonably be drawn from the amount of damages awarded by the jury that the verdict was inspired by prejudice and passion. The loss of wages alone would amount to nearly the sum awarded. But his loss of earnings was not the only element of damages recoverable. He was entitled to recover for injury to feelings and reputation as well as to the loss of business. (*Sweet* v. *Post Pub. Co.*, 215 Mass. 450, [Ann. Cas. 1914D, 533, 47 L. R. A. (N. S.) 240, 102 N. E. 660].)

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 10, 1910, and the following opinion then rendered thereon:

ANGELLOTTI, C. J.—The application for a hearing in this court after decision by the district court of appeal of the third district is denied. We deem it proper to say in denying the application that we do not approve what is said in the opinion of the district court of appeal with reference to the action of the trial court in modifying certain requested instructions relative to privileged communications, said court having modified same by "injecting into each a qualification to the effect that before libelous matter can be privileged it must appear that it was and is substantially true." We are satisfied, however, that the error of the trial court in this regard must be held to be immaterial, in view of the express finding by the jury that in the writing and publication of the letter the defendant was actuated by actual malice toward plaintiff (see Civ. Code, sec. 47, subd. 3), which finding we deem sufficiently sustained by evidence.

Shaw, J., Sloss, J., Lawlor, J., and Melvin, J., concurred.