## JAMES E. SCRIPPS v. GEORGE B. FOSTER.

*Libel—Good faith—Physician's testimony—Exemplary damages.*

It is the right and duty of newspapers to discuss measures relating to the health, welfare, comfort and happiness of the people. But this will not justify libelous statements.

Where exemplary damages are sought for libel, defendant may introduce circumstances tending to show that he acted in good faith and with all proper precautions, and had good cause to believe that the statement complained of was true.

Where an alleged libelous article is one of a series relating to a matter of public concern, defendant may introduce them all to show good faith on his part.

A newspaper charged a city physician with causing death by the careless use of the trocar in vaccination after its use had been forbidden by the board of health. *Held* that in an action for libel the defendant might show that plaintiff had, in his presence, justified its use.

Physicians' testimony as to the condition of sick persons is admissible where no confidential relations are violated in giving it.

The statute excluding the testimony of physicians as to facts learned in attendance upon their patients is merely to prevent the abuse of the confidential relation between a physician and his patient and is for the latter's protection. Comp. L., § 5943.

Error to the Superior Court of Detroit. Submitted October 9. Decided October 28.

LIBEL. Defendant brings error.

*Henry W. Montrose* and *C. I. Walker* for plaintiff in error. Evidence of the facts and circumstances con-

nected with the publication of an alleged libel for which exemplary damages are sought is admissible to show the defendant's motives and the absence of express malice, 2 Add. Torts, 994, n. 1191; Townshend on Libel, 623, n.; *Huson v. Dale,* 19 Mich., 17; *Bush v. Prosser,* 11 N. Y., 350; *Rearick v. Wilcox,* 81 Ill., 77; *Hutcheson v. Wheeler,* 35 Vt., 330; the testimony of physicians as to the condition of patients is inadmissible whether their knowledge came from the communications of patients or attendants or through personal observation, *Briggs v. Briggs,* 20 Mich., 34; *Johnson v. Johnson,* 4 Paige, 468; *Edington v. Mut. Life Ins. Co.,* 67 N. Y., 185; *Sloan v. N. Y. Cent. R. R. Co.,* 45 N. Y., 128; and if it was needful to enable them to prescribe, *Campau v. North,* 39 Mich.

*Griffin & Dickinson* for defendant in error. In an action for newspaper libel, the libelous statements in the article cannot be balanced by other statements that are correct, *Wason v. Walter,* L. R. 4 Q. B., 73; *Flint v. Pike,* 4 B. & C., 473; *Hoare v. Silverlock,* 9 C. B., 20; *Smith v. Scott,* 2 C. & K., 580–3; *Stiles v. Noakes,* 7 East, 493; *Curry v. Walter,* 1 Bos. & P., 525; *Ryalls v. Leader,* L. R., 1 Ex., 296; *Barrows v. Bell,* 7 Gray, 301; *Lewis v. Levy,* El. Bl. & El., 537; *Behrens v. Allen,* 3 F. & F., 135; *Thomas v. Croswell,* 7 Johns., 271; *Moffatt v. Cauldwell,* 3 Hun, 26; *Cooper v. Greeley,* 1 Den., 347; *More v. Bennett,* 48 N. Y., 472; *Commonwealth v. Blanding,* 3 Pick., 304; the libelous character of the article is a question of law for the court, *Pittcok v. O'Niell,* 63 Pa. St., 253; *Duncan v. Thwaites,* 3 B. & C., 556; *Lewis v. Clement,* 3 B. & A., 702; *Saunders v. Baxter,* 6 Heisk. (Tenn.), 369; *Ackerman v. Jones,* 37 N. Y. Sup. Ct., 42, a jury may infer malice from a libelous publication, *Whittemore v. Weiss,* 33 Mich., 353; *Jellison v. Goodwin,* 43 Me., 287.

MARSTON, J.   This action was brought to recover damages sustained on account of the publication of an

article concerning the plaintiff Foster, in the performance of his duties as city physician.

The defendant offered in evidence certain articles published in the *Evening News*, discussing the subject of small-pox and compulsory vaccination, and pointing out precautions to be observed by both the citizen and the vaccinating physician. Defendant's counsel also offered in evidence the proceedings of the common council of the city of Detroit and of the Detroit board of health, also a petition of the physicians of Detroit, all pertaining to the same matter. The defendant was examined as a witness in his own behalf. He was asked, "What, do you know of Dr. Foster being at your office previous to this publication and defending the use of the trocar?" This evidence was offered, not in justification, but to prevent, or limit in amount, the recovery of exemplary damages which were claimed. It is conceded that this evidence would not have been admissible in the case for any other purpose, as under the evidence plaintiff was entitled to recover actual compensatory damages.

The evidence offered was excluded, and in order to fully and properly understand the bearing and probable effect of the evidence offered, it might be well to look at the nature of the article complained of.

It stated that the common council had made an appropriation of money and ordered a general vaccination throughout the city; that the *Evening News* had cautioned the authorities and people generally against too hasty action in the matter; that the wisdom of compulsory vaccination was doubted by many of the best physicians, not so much from a lack of confidence in the efficacy of vaccination, as from a fear that it might not be properly done; that the board of health had taken into consideration the two principal sources of danger likely to accompany a general vaccination, that of the use of impure virus and that of the use of improper implements in applying it, and had ordered that the operation should be performed in a certain way which precluded the use of the trocar.

The article then set forth that most of the physicians had acted under the instructions of the board of health; that several who thought they could make more money by ignoring the rule did so, notably Dr. Foster, the physician of the second district, who preferred to use the trocar, with which he was enabled to perform vaccination at the rate of one hundred a day instead of the twenty or thirty which would have been possible with the proper instrument; that he had persisted in his course, arguing that the trocar was a proper and safe instrument to use. It then in effect charged him with causing the death of the infant son of Mr. Connelly; that the operation was vaccination, the instrument the trocar. Also the sickness of two other children; that scarlet fever had been inoculated into their systems by Dr. Foster's trocar which had probably a few hours before pierced the arm of some scarlet fever patient in some remote part of the city. This statement will be sufficient for the purposes of the present case.

Evidence was introduced tending to prove that the reporter who prepared the article had assured defendant that every word in it was correct, and that defendant so believed.

From the statement thus made it appears that the prevalence of small-pox in the city of Detroit was causing alarm, and that official action had been taken by the public authorities, and measures adopted to prevent the spread thereof, and that the newspaper in which the article in question was published had in a series of articles been discussing the propriety and wisdom of the measures adopted.

It would seem as though the public newspapers of the present day had not only the right, but that it was their duty to take part in the discussion of those matters which relate to the health, welfare, comfort and happiness of the people. The wisdom and propriety of the action taken by the public authorities, and the means

41 MICH.—94.

and instruments to be adopted to check the spread of a malignant disease would seem to be of sufficient public importance as to be deemed a matter proper for comment and criticism. The newspaper articles referred to we may assume were proper and the publication thereof justified by the then existing circumstances. None of these considerations would however justify the charge made against Dr. Foster as complained of.

It is and was on the trial conceded that Dr. Foster in vaccinating Mr. Connelly's children did not use the trocar, but there was evidence introduced tending to show the truthfulness of many of the facts set forth in the article complained of, but not that Dr. Foster was responsible therefor.

In this State it is the settled doctrine that .in an action like the present, where the plaintiff seeks to recover exemplary damages, the defendant on the trial may introduce facts and circumstances tending to show that he acted in the matter complained of in good faith, and that after using all proper precaution he had good reason to believe that the facts as published were true.

In considering the question of good faith and reasonable belief for the publication of such an article as the one complained of, evidence of the publication thereof, upon the assurance of a third person that the facts stated therein are true, when standing alone would not be so likely in many cases to carry conviction to the mind of the ordinary juror, as though accompanied by previous facts and circumstances pertaining to the same subject matter, and the tendency of which led in the same direction. In many instances it would be very difficult indeed to satisfy a juror that a distinct wrong had been done by a particular individual, or that any one could have had reason to believe such a person capable of committing such an act, upon proof of the direct evidence relating thereto. The reputation of the individual complained of and the nature of the act charged may be sufficient to overcome what in the case of some other individual

might be considered more convincing proof. And yet in either case, when considered in the light of the surrounding circumstances, the previous acts and utterances of the person charged would be sufficient to remove all reasonable doubt upon the subject.

So in times of public excitement and alarm, articles may be published pertaining thereto based upon good motives and for proper purposes, which at other times might be considered as entirely uncalled for and censurable.

If the trocar was an improper instrument to use in the vaccination of children and likely to be the cause of such great danger as in the article complained of, a jury might well doubt whether the defendant upon the assurances given him, could reasonably have believed that the city physician could be guilty of the charge of so using it. If however there had been previous discussions in the newspapers, and official action taken condemning the use of the trocar for such purposes, or recommending the use of other instruments to the exclusion thereof, and in the light of such official action and discussion the plaintiff had in presence of the defendant admitted using the trocar and defended its use in vaccinating, surely the defendant in the light of such facts would be much more likely to believe the statements contained in the article to be true. So a jury in the light of such previous circumstances might give credence to his statement of good faith, which in the absence thereof, they would promptly reject.

I am of opinion that where the article complained of is one of a series, or forms a part of a discussion pertaining to the same subject matter, the defendant may introduce in evidence all the articles for the purpose sought in this case. It seems to me that any other rule would limit and restrict newspaper discussion pertaining to public matters within unreasonable bounds, and would be the means of inflicting a punishment unnecessary and uncalled for in a case where uninten-

tionally and with the best of motives, the proper limits of discussion had been overstepped.

The entire series of articles, when examined, may show some reason for the publication of the unjustifiable article, while the latter standing by itself, separated from the things which gave rise to and assisted in producing it, might appear to be without the shadow of an excuse.

I am also of opinion that the evidence offered to prove that the plaintiff had in presence of the defendant justified the use of the trocar should have been admitted, and the fact that one witness was permitted to so testify would not cure the error.

Objection was made to certain physicians who called to see these children, testifying to their condition, because such condition was ascertained from visits made as attending physicians. Objection was also made because of certain information they had gained from the parents of the children at the time.

The object of the statute (2 Comp. Laws, § 5943), is to prevent the abuse of the confidential relation existing between the physician and his patient and is for the protection of the latter. Where the relation is such that no confidence is reposed there is none to be abused. No error was committed in admitting this evidence.

For the errors already pointed out the judgment must be reversed with costs and a new trial ordered.

GRAVES and COOLEY, JJ. concurred.

CAMPBELL, C. J. I am inclined to think it was error to shut out the evidence of Dr. Foster's defense of the use of the trocar. Although it was not claimed that he used it, there seems to have been a dispute concerning the propriety of its use, and the force of the libel was in a charge of its wrongful use for selfish purposes. It was among the possibilities that testimony might raise a belief in its impropriety. It cannot be said that a knowledge derived from the doctor himself that he ap-

proved the instrument might not have had weight in persuading Mr. Scripps of the probability of the charge that he used it on the occasion referred to.

But I cannot discover how the fact that there was general excitement or that previous articles had been published in good faith touching the general interests and duties of citizens and physicians, could have had any tendency to disprove the intentional quality of the libel in question, which was aimed at showing misconduct in a physician that would certainly have been aggravated and not mitigated, if supposed to be true, by the fact that general attention had been turned to the impropriety of doing what he was charged to have done. I cannot see how its exclusion could injure plaintiff in error. But the only mitigation of damages—so far as he is concerned—must arise from showing probable cause for the belief which induced him to publish the libel. And I do not think the excluded publications and public action had the least bearing upon that matter, or in any way could have led Mr. Scripps to believe that Dr. Foster had acted improperly.

I agree with my brother Marston that the rule excluding medical testimony of matters learned in medical treatment is a rule of privilege against the betrayal of personal confidence, and has no reference to such inquiries as were made here.