## SMEDLEY v. SOULE.

LIBEL—PLEADING—DAMAGES—EVIDENCE—PRIVILEGE—MALICE.

*1. In an action for libel, plaintiff, in order to recover for damages in his profession, must, in his declaration, connect the libel by the proper colloquium with his profession, and allege special damages.

2. Where no loss of business is shown, no damage can be recovered for injury to one's profession.

3. Act No. 216, Pub. Acts 1895, providing that the jury, in rendering their verdict, shall state the amount they award for injury to feelings, and the amount of other damages, is constitutional.

4. Plaintiff, an attorney, presented a bill for legal services to a municipality. The common council were evenly divided upon its allowance. The bill was allowed by the casting vote of the mayor. The mayor being a candidate for re-election, defendants published a circular reading as follows: "Does any citizen believe that he [the mayor] did not have a 'divy' in the notorious fraudulent Smedley bill? * * * The notorious Smedley bill, that the mayor has included as one of the items the people are asked by him to bond the city to pay, don't have to be paid. Judge Padgham has taken care of that. The people will not have to stand that fraud." *Held,* that the publication was libelous *per se.*

5. Where the defendants admit that they had no foundation whatever for the publication of the libel, and no reason to believe it was true as to the plaintiff, the rule of privilege has no application.

6. Where the publication is libelous *per se,* and charges criminal or disreputable conduct, express malice may be inferred from such reckless charges. Malice, in such case, cannot be conclusively disproved by the testimony of the defendants that they had none.

Error to Kent; Grove, J. Submitted October 2, 1900. Decided November 13, 1900.

*Head-notes by GRANT, J.

Case by Charles O. Smedley against Charles E. Soule and others for libel. From a judgment for plaintiff, defendants bring error. Reversed.

Plaintiff is an attorney at law residing in the city of Grand Rapids. He was employed by the mayor of the city of Grand Haven, on behalf of the city, in a case which involved the veto power of the mayor. The circumstances of that litigation are stated in *Baar* v. *Kirby*, 118 Mich. 392 (76 N. W. 754). For such services plaintiff presented a bill against the city. The council were a tie upon its allowance. The mayor, claiming the right to vote in case of a tie, voted for it. The clerk refused to issue his warrant for the amount. Thereupon plaintiff brought suit in the Ottawa circuit court by *mandamus* to compel the clerk to issue it. He was defeated there, and brought the case to this court. A statement of that case will be found in *Smedley* v. *Kirby*, 120 Mich. 253 (79 N. W. 187). Subsequently the question of bonding the city to pay certain of its indebtedness, including plaintiff's bill, was submitted to a vote of the electors. That submission took place before the decision in this court of *Smedley* v. *Kirby*. The mayor issued a manifesto urging the electors to vote for the bonds. The defendants—four of them aldermen and the other the city attorney—issued a circular in opposition to that of the mayor. This circular contained the following language:

"Does any citizen believe that he [the mayor] did not have a 'divy' in the notorious fraudulent Smedley bill? * * * The notorious Smedley bill, that the mayor has included as one of the items the people are asked by him to bond the city to pay, don't have to be paid. Judge Padgham has taken care of that. The people will not have to stand that fraud."

The declaration, in setting forth this article, contains appropriate innuendoes that plaintiff had an agreement with the mayor to divide the amount of his services with him, that his bill was a fraudulent one, and that the circuit court had so decided. With their plea of the gen-

125 MICH.—13.

eral issue the defendants filed a notice of special defense, claiming that they—

"Only imputed fraud to the mayor, and that their only reference to plaintiff's name was in designating the bills as the mayor had designated them, and not to make any personal reference to the plaintiff; and that they did not impute, or intend to impute, any fraudulent, uncomplimentary, unprofessional, or other wrong conduct to the plaintiff in making said publication."

Plaintiff recovered verdict for $1,500, of which $500 was for injury to feelings and $1,000 for other damages.

*Walter I. Lillie* and *Charles E. Soule* ( *George A. Farr*, of counsel ), for appellants.

*Smedley & Corwin* ( *Knappen & Kleinhans*, of counsel ), for appellee.

GRANT, J. ( *after stating the facts* ). 1. The court held, and so instructed the jury, that:

"The declaration avers an injury to plaintiff's fame and character as an attorney. * * * The publication complained of tends, upon the face of it, to the injury of plaintiff in respect to his profession and business."

It is insisted that the declaration sets forth no injury to plaintiff in his professional or business capacity, but only in a general way to his feelings, credit, and reputation, and that without such allegation no recovery can be had. The declaration is general. It states that he is an attorney at law and solicitor in chancery, residing in the city of Grand Rapids, and doing business in the counties of Kent, Allegan, and Ottawa, and especially in the city of Grand Haven; that he had many friends, acquaintances, and clients in said city of Grand Haven; that he acted in the conduct and management of said business with integrity and skill, and thereby derived and acquired great gain and profit; that he was reputed, esteemed, and accepted among all good and worthy citizens to be an attorney and a person of good name, fame, reputation, and

credit in said counties; that the defendants, contriving and wickedly and maliciously intending to injure him in his good name, fame, and credit, and to bring him into public scandal, infamy, disrepute, and disgrace among his neighbors, published the libel complained of. After setting forth the libel and appropriate innuendoes, the declaration alleges that "by means of the committing of said several grievances · * * * he hath been and is greatly injured in his good name, fame, and credit, and brought into public scandal, infamy, and disgrace with and amongst all his neighbors," etc. The declaration does not allege any loss or injury to his profession, and the record is barren of any evidence tending to show any such loss or injury.

The learned counsel for plaintiff cited *Henkel* v. *Schaub*, 94 Mich. 542 ( 54 N. W. 293 ). The distinction between the declaration in that case and this is apparent upon examination. In that case the declaration expressly alleges the intent to "injure plaintiffs in their property by bringing said property into bad repute and lessening the value thereof." It expressly alleges a loss and damage to the plaintiffs by reason of the libel; alleges of what the loss consisted, and that the amount thereof was $600. The declaration in this case does not attempt to allege injury to plaintiff in his profession, or that he has been injured therein. It is urged that a presentation of a bill by an attorney is a necessary incident to his business, and any disreputable conduct alleged in connection therewith should be held to be, upon its face, spoken of him in his profession. If plaintiff had not performed these services, but the claim for such services rendered by another had been assigned to plaintiff, and he had presented that claim to the common council, and the same charge made, could it be said that that was an attack upon him as an attorney, and without any colloquium to show that it was spoken of him as an attorney, or intended to injure him in his profession, and to allege resultant damages?

Where A., a physician, brought an action for slander against C. for stating that A. had been guilty of adultery, the declaration, as does this that plaintiff was an attorney, stated that A. was a physician.   The declaration failed to allege that the act was committed while in the exercise of his profession, though it did allege that it was said—

"Of and concerning the said plaintiff, so carrying on such profession as aforesaid, and of and concerning him in his said profession, and of and concerning the said rumor and report, that is to say, ' Have you heard that it is out who are the parties in the *crim. con.* affair that has been so long talked about ? "

The court arrested the judgment, and said :

"After full examination of the authorities, we think that in actions of this nature the declaration ought not merely to state that such scandalous conduct was imputed to the plaintiff in his profession, but also to set forth in what manner it was connected by the speaker with that profession."   *Ayre* v. *Craven,* 2 Adol. & E. 2.

That case was approved in *Gilbert* v. *Field,* 3 Caines, 329, in which case the declaration contained no colloquium respecting plaintiff's profession.   After stating the rule, the court say :

"The reason assigned for the rule is that, unless the words appear to be spoken concerning one's profession, office, or trade, he cannot lose or be discredited thereby."

In *Van Epps* v. *Jones,* 50 Ga. 238, under a statute which, like ours, authorizes the recovery for damages to one's profession, trade, or business, it is said :

" The authorities indicate that the charge must be of something that affects his character generally in his trade. A particular act may or may not do this, and the matter would depend on the colloquium.   But the authorities are uniform that the words must be charged to have been used in reference to one's trade or profession.   The speaker must have had the trade or profession of the plaintiff in view, and utter the words in reference to it; as if he should say of a grocery merchant he keeps false weights, or of a lawyer that he won't pay his clients the money he collects

for them. Starkie, Sland. 109, 126. It would be entirely a new ground of action to hold that it was actionable to utter of a lawyer that he refused to pay a particular debt, there being nothing in the words or in the colloquium to indicate that the speaker was alluding to him as a lawyer. Such a rule would put lawyers on a vantage ground that the law has not put them on. See Starkie, Sland. 109, 126."

In *McCallum* v. *Lambie*, 145 Mass. 234 (13 N. E. 899), the second count in the declaration alleged plaintiff to be a merchant and manufacturer, and that the publication greatly injured him in his trade, business, and employment. *Held*, on demurrer, to be insufficient, because he did not allege that the "words were published of and concerning the plaintiff in his trade, business, or profession."

It is common in all actions for libel and slander for the plaintiff to allege not only his good name, etc., as a citizen, but also to allege his business or profession; and the mere fact that such occupation or business is stated in the declaration is not sufficient to justify the inference that the libelous or slanderous article was uttered with reference to his particular business or profession, especially in the absence of any allegation that he has suffered pecuniary loss in his profession or business, but has only suffered loss in his good name, fame, and credit. What is there in such a declaration to notify a defendant that plaintiff claims injury to his profession or business, or that he would show pecuniary loss without alleging any, or that a jury should be turned loose in a realm of speculation to guess what loss in that direction plaintiff has sustained? See *Barnes* v. *Trundy*, 31 Me. 321; *James* v. *Brook*, 9 Q. B. 7; *Curry* v. *Collins*, 37 Mo. 324; 13 Enc. Pl. & Prac. 38; *Weiss* v. *Whittemore*, 28 Mich. 366.

In *Randall* v. *Evening News Ass'n*, 79 Mich. 266 (44 N. W. 783, 7 L. R. A. 309), the declaration specifically and plainly charged that the publication complained of imputed to the plaintiff a "gross misconduct in the discharge of his official duties" as a member of the legisla-

ture. If the declaration had alleged that the plaintiff in that case was an attorney at law, clearly that allegation would not be sufficient for him to recover damages for injury to his profession; not even if he had alleged that he was so injured. All charges of disreputable or criminal conduct tend to injure every man in his profession, trade, or occupation; but the law does not permit recovery therefor unless the words be spoken of him in regard to such profession, trade, or occupation, and loss is alleged and proved. Every such plaintiff can recover for injury to feelings and damage to his reputation. If he desires to go beyond this, it is a wholesome rule to require him to connect the libelous charge by the proper colloquium with such profession, trade, or occupation, and to allege special damages.

We think this declaration was not sufficient to justify the court in submitting to the jury the question of damages in his profession.

2. The instructions were erroneous for another reason, viz., there is not a scintilla of evidence upon the record that the plaintiff was injured in his profession. Upon this the record is silent. If it should appear that plaintiff's business had increased after the publication of this article, would the jury be justified in finding that he had suffered loss in consequence of the publication? When one claims loss in his business or profession, it is certainly in his power to show such loss. Is it not a reasonable rule which requires him to do so before he can obtain a judgment? When no such loss is shown, the injury must be confined to injured feelings and injured reputation. This will afford ample opportunity for compensation resulting from the libelous publication, as will appear by reference to the case of *Maclean* v. *Scripps*, 52 Mich. 214 (17 N. W. 815, 18 N. W. 209), wherein plaintiff, a professor in the University of Michigan, recovered a verdict of $20,000. This point was settled in *Scougale* v. *Sweet*, 124 Mich. 311 (82 N. W. 1061), where we held that an award by the jury of $50 damages for injury to plaintiff's office as

sheriff of the county could not be sustained in the absence of any testimony to show any loss in such office.

3. Counsel assail Act No. 216 of the Public Acts of 1895 (sections 10423–10425, 3 Comp. Laws 1897) as unconstitutional, and cite *Park* v. *Free Press Co.*, 72 Mich. 560 (40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544), and *McGee* v. *Baumgartner*, 121 Mich. 287 (80 N. W. 21). In the latter case we declined to pass upon its constitutionality, as a determination upon that point was unnecessary. We held that the legislature could not take from the plaintiff the right to recover for injury to his reputation. The difference between the act involved in *Park* v. *Free Press Co.* and the present act will appear upon a comparison of the two. In that case the court pointed out that that act deprived a woman slandered in her chastity from recovering damages; also a man whose income was from salary, or from a fixed investment. It was held that this was beyond the power of constitutional legislation. The act of 1895 does not attempt to deprive a party of his right of action for any libel or slander which existed at the common law. It merely provides that the jury, in rendering their verdict, shall state the amount they award for injury to feelings and the amount for other damages mentioned. We see nothing unconstitutional in this provision of the act.

4. This publication was libelous *per se.* The plain inference from the article is that the plaintiff and the mayor had entered into an agreement to defraud the city, and had agreed to divide between them the amount of the bill that was allowed. Such conduct would be disreputable and corrupt, if not criminal. The mayor alone could not make such an agreement to "have a divy." Upon the face of the article it charged plaintiff with the same conduct that it charged upon the mayor, and that one was as guilty as the other. *Bourreseau* v. *Journal Co.*, 63 Mich. 425 (30 N. W. 376, 6 Am. St. Rep. 320).

5. It is urged that the publication was one of qualified privilege. This is not a case for the application of the

rule of privilege, absolute or qualified. Defendants all admitted that they had no ground whatever for charging plaintiff with being a party to this corrupt agreement. On the contrary, they admitted in open court that plaintiff was in no way connected with the mayor in the controversy between the mayor and the council. The only defense they could make for the publication of such an article would be its truth, or their honest belief of its truth. But when it is admitted that they had no foundation for such belief, the question of privilege is excluded from consideration; and the court correctly charged the jury that the defendants were liable for whatever damages plaintiff sustained by virtue of its publication. *Belknap* v. *Ball*, 83 Mich. 583 (47 N. W. 674, 11 L. R. A. 72, 21 Am. St. Rep. 622); *Bronson* v. *Bruce*, 59 Mich. 467 (26 N. W. 671, 60 Am. Rep. 307).

6. It is urged that there was no malice, because the defendants all testified that they had no malice against the plaintiff, and plaintiff testified in reply to a question by defendants' counsel:

"You never believed that Judge Soule or these aldermen had anything personally against you, did you?

"*A.* I believe that they printed anything and did anything they could against Mayor Baar, and they didn't care how they threw me on. When I read that circular, I was warm under the collar.

"*Q.* Just answer my question.

"*A.* Why, no; they never had anything against me; but I think they printed stuff, and didn't care whom they talked about."

Defendants could not charge plaintiff with crime or disreputable conduct, and then conclusively disprove malice by testifying that they had no malice, or by the testimony of plaintiff that he did not believe they had anything personal against him, but were so reckless that they did not care what they said. Express malice may be inferred from such reckless charges; and, where the publication is not privileged, the question of malice is properly left to the jury. In reply to a special question, the jury found

that there was express malice.   We think there was suffi-
cient testimony upon which to base the finding.

Judgment reversed, and new trial ordered.

The other Justices concurred.

[Subsequently, on plaintiff's motion, the judgment was
affirmed as to the $500 awarded by the jury for injury to
feelings, on the filing of a remittitur as to the balance of
the judgment.— REPORTER.]