[L. A. No. 5787. In Bank.—April 25, 1921.]

## C. E. SNIVELY, Respondent, v. RECORD PUBLISHING COMPANY (a Corporation), et al., Appellants.

[1] LIBEL—PRIVILEGED PUBLICATIONS—CIVIL CODE, SECTION 47.—Under subdivision 3 of section 47 of the Civil Code a publication made in a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information, is privileged, and section 48 of said code declares that in privileged communications coming within this class, malice is not inferred from the communication or publication.

[2] ID.—NEWSPAPERS — RELATION TO COMMUNITY — PRIVILEGED COMMUNICATIONS.—A newspaper stands in such relation to the people of the community in which it is published and circulated that, with regard to publications therein concerning local public officers, it comes within the scope of that part of subdivision 3 of section 47 of the Civil Code requiring a reasonable ground for supposing the motive of the communication innocent, if the matter published has the other characteristics of a privileged communication. This rule does not arise from the fact that the publication is made in a newspaper, but is based on the fact that the official conduct of public officers, especially in a government by the people, is a matter of public concern of which every citizen may speak in good faith and without malice. The privilege of the newspaper is in no wise different from that of any citizen of the community.

[3] ID.—CONDUCT OF PUBLIC OFFICER.—Since the conduct of public officers in the administration of their offices is a matter in which every citizen of the community which they serve is interested, a publication in a newspaper consisting of a cartoon representing the chief of police of the city in which the paper is published as being dishonest in the administration of his office, if otherwise privileged, must be considered as one made to persons interested, and on an occasion which would ordinarily afford reasonable grounds for supposing that it was made from innocent motives,

2. Comment on matter of public interest as privileged communication, notes, Ann. Cas. 1917B, 409, 450; Ann. Cas. 1917D, 266; Ann. Cas. 1918E, 165, 1011.

Privilege as affected by extent of publication, notes, 20 L. R. A. (N. S.) 361; L. R. A. 1915E, 131.

and the publication, therefore, appears to come within the definition of privilege as given in subdivision 3 of section 47 of the Civil Code.

[4] ID.—APPOINTIVE OFFICER.—Although the one concerning whom such a publication is made is not an elective officer but is appointed by the mayor of the city, and is not subject to recall but may be removed by the mayor, the rule of some decisions that a communication concerning such an officer which is not made to those having the power of removal or of appointment, but is made to the public generally, is not privileged, should not be followed, as every citizen has the right to apply to the mayor in such a case for the removal of an unfit or corrupt officer, and communications made in good faith and without malice to the public generally respecting the conduct of such officer come within the spirit and purpose of the statute regarding privileged communications, as they tend to promote knowledge concerning such officers and give citizens a basis for their petitions to the mayor. (Overruling Dauphiny v. Buhne, 153 Cal. 759, and Jarman v. Rea, 137 Cal. 350.)

[5] ID.—WHAT CONSTITUTES ACTIONABLE LIBEL — FALSE AND UNPRIVILEGED COMMUNICATIONS.—Since a libel is a false and unprivileged communication, it follows that the publication must be both false and unprivileged in order that it shall constitute an actionable libel, and the allegation and proof that it is true in the sense intended constitutes one defense. Allegations and proof that it was privileged upon any of the grounds set forth in section 47 of the Civil Code also constitute a defense. The defense of privilege under subdivision 3 of section 47 does not depend at all on the truth of the defamatory charge. With respect to that form of qualified privilege the code does not require that the publication shall be true in order to bring it within the protection of the privilege.

[6] ID.—CHARGE OF CRIME.—With regard to said form of qualified privilege, no logical distinction can be made between a false charge of crime and a false charge of any other fact of a defamatory character.

[7] ID.—PUBLICATION OF CHARGE OF CRIME BY PUBLIC OFFICER—NONLIABILITY FOR DAMAGE.—If the publisher of a newspaper honestly believes that a public officer has committed crime of a nature

3. Liability of editor or manager of newspaper or periodical for libel published therein, note, 7 Ann. Cas. 457.

4. Falsity of charge against public officer as affecting privilege against prosecution for libel, notes, 3 Ann. Cas. 649; Ann. Cas. 1916A, 600.

Words or publication relating to public officer or candidate for office as libel and slander, note, L. R. A. 1918E, 21.

which would indicate that he is unfit for the office he holds, he is not liable for damages under the code in a civil action for libel, when, without malice, and so believing, he publishes a statement to that effect to the community served by the officer.

[8] ID.—MALICE.—The word "malice" in the provisions of the Civil Code upon the subject of libel and slander means actual or expressed malice, as distinguished from that somewhat fictional form of malice sometimes described as "a wrongful act done intentionally without just cause or excuse," or as "the absence of legal excuse."

[9] ID.—ACTUAL MALICE—PROOF OF.—Actual malice may be inferred from the publication of a defamatory charge that is false in fact and not within the realm of absolute privilege defined in subdivisions 1 and 2 of section 47 of the Civil Code, and actual malice may be inferred by the court or jury where the charge is false and is libelous per se and the defendant publishes it without having probable cause for believing it to be true, and such inference is sufficient to defeat the defense of qualified privilege.

[10] ID.—OVERDRAWING OR EXAGGERATING FACTS.—On the subject of actual malice it is important to know that while one may, on a privileged occasion and without malice, publish to the interested persons what may be false, if he honestly believes it to be true, he is not by this rule given a license to overdraw, exaggerate, or color the facts in his communication. The manner of statement is material upon a question of malice, and if the facts believed to be true are exaggerated, overdrawn, or colored to the detriment of plaintiff, or are not stated fully and fairly with respect to the plaintiff, the court or jury may properly consider these circumstances as evidence tending to prove actual malice, and they may be sufficient for that purpose without other evidence on the subject.

[11] ID.—ISSUE OF MALICE—BURDEN OF PROOF.—In an action for damages for libel where the plaintiff struck out of his complaint the allegations that the publication in question was made with actual malice and the prayer for punitive damages, so far as the plaintiff's case was concerned, this eliminated the issue of malice and he could recover without introducing any evidence on that subject; but by averring in their answer that the publication was on a privileged occasion and was made without malice, the defendants directly put in issue the question of actual malice, and as absence of actual malice was an essential part of that defense, it was necessary for the defendants to prove such absence in order to sustain this defense.

10. Malice which will preclude qualified privilege as inferred from publication alone, note, 12 L. R. A. (N. S.) 91.

[12] ID.—ERRONEOUS INSTRUCTION.—In such a case the court erred in instructing the jury to the effect that it was for it to determine the meaning and effect of the cartoon in question, and that if it was reasonably susceptible of conveying to the ordinary person the meaning that the plaintiff was officially dishonest, or that he was guilty of accepting a bribe, or was ready to accept a bribe, then the publication was not privileged and the plaintiff was entitled to recover compensatory damages; and it was also error to instruct the jury in effect that it could not consider the publication as privileged and that it had nothing to do with that defense, the instructions being given on the assumption that there could be no privilege unless the charge made by the cartoon in the sense stated was true, and that it was incumbent upon the defendants to prove such truth.

[13] ID.—GENERAL REPUTATION OF PLAINTIFF FOR INEFFICIENCY AND INCOMPETENCY—ADMISSIBILITY OF.—In such an action plaintiff's general bad reputation upon any trait of character in issue was a proper subject of proof by the defendants in mitigation of damages, and where that trait of plaintiff's character was put in issue by the pleadings and the cartoon was susceptible of an interpretation that he was inefficient and incompetent as chief of police, defendants had a right to prove that his general reputation in this respect was bad.

[14] ID.—PROOF OF OFFENSES OF OTHER POLICEMEN — WHEN INADMISSIBLE.—Proof by the defendants of offenses and dereliction of duty on the part of certain special policemen would not be relevant or competent in such a case unless it was also shown that the plaintiff had some knowledge thereof at the time, or that after being informed thereof he failed to take the proper action in regard thereto, and the court did not err in rejecting such evidence when it was admitted that there was no intention of offering proof to connect plaintiff therewith.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

John H. Perry and Leon R. Yanckwich for Appellants.

E. H. Allen, Vincent Morgan and Porter, Morgan & Parrot for Respondent.

SHAW, J.—The defendants appeal from the judgment.

The complaint purports to state a cause of action in damages for a libel published by defendants of and concerning

the plaintiff. The alleged libel consisted of a cartoon published in a daily newspaper in Los Angeles, known as the "Los Angeles Record." The Record Publishing Company was the publisher and Dana Sleeth was the editor of said paper. The complaint averred that the plaintiff was chief of police of Los Angeles at the time of said publication and that said cartoon was "meant and intended by the said defendants, and each of them, to make the plaintiff appear ridiculous, dishonest and unfit for public office"; that it was intended by the defendants to mean, and did mean, that the plaintiff, personally and as chief of police, was posing and pretending to be honest and upright, whereas he was actually, personally, and as chief of police, dishonest, "and was receiving money secretly and surreptitiously . . . for unlawful purposes and in violation of his oath of office," and that it was intended to mean, and did mean, and was understood by all persons who saw the cartoon and read the language therein to mean, that "the plaintiff was a grafter, to wit, a dishonest public official."

The answer admitted the publication of the cartoon by the defendants, as alleged, and that the plaintiff was then the chief of police aforesaid. It denied that the cartoon was meant or was intended by the defendants to make the plaintiff appear ridiculous or dishonest and unfit for public office, or that it was so understood by those who saw the cartoon and read the language therein. It also denies that defendants intended to or did mean that the plaintiff, as chief of police or personally, was posing or pretending to be honest, whereas he was personally and as chief of police dishonest and unfit to be chief of police, or that he was receiving money secretly or surreptitiously for unlawful purposes and in violation of his oath of office, or that the cartoon was so understood by those who saw and read it.

The answer further alleged as affirmative defenses, first, that the facts represented in said cartoon, so far as they relate to the plaintiff, were and are true in several particulars which it is unnecessary to state in detail, because this defense is not involved in this appeal; and, second, that the facts on which the cartoon was based were matters of public interest, because the plaintiff was then chief of police as aforesaid, that the "Los Angeles Record" was then a newspaper of general circulation, wherefore it was the right and duty of the

defendants as publishers and editor thereof to inform the people of facts concerning the official conduct of the plaintiff and to draw inferences from such facts, and that the cartoon concerned the plaintiff solely in his official capacity and was published without malice.

At the time the case came on for trial the complaint contained allegations to the effect that the defendants acted with express malice toward the plaintiff in making the said publication concerning him and claimed a large sum of money as punitive damages. At the opening of the trial the plaintiff by leave of the court struck out of the complaint the allegations relating to malice and the prayer for punitive damages. The trial was thereafter conducted upon the theory that no express malice was alleged and that no punitive damages were prayed for.

The main contention of the defendants is that, since the charge of malice was thus wholly withdrawn from the case, and since the cartoon complained of related solely to the plaintiff in his capacity as chief of police, the publication was privileged.

A libel is defined in the Civil Code as ''a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'' (Civ. Code, sec. 45.)

[1] Section 47 of the Civil Code defines five classes of publications which are declared to be privileged. The present case, if it is privileged, falls within subdivision 3 of that section. This declares that a privileged publication is one made ''in a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information.'' Section 48 declares that in privileged communications coming within this class, ''malice is not inferred from the communication or publication.''

An important question arising from this definition of privilege as applied to the present case is whether or not the defendants, as publishers of the ''Los Angeles Record,'' a

newspaper of general circulation in Los Angeles, in making
the publication concerning the chief of police of that city,
occupied the position of "one who stands in such relation to
the person interested as to afford a reasonable ground for
supposing the motive for the communication innocent"; the
persons "interested" in this case being the citizens of Los
Angeles. We will discuss the law on the subject of privi-
leged communications before taking up the question of the
meaning and effect of the cartoon in question. It is appar-
ent from these sections of the code that if the cartoon com-
plained of constituted a privileged communication by the
defendants to the citizens of Los Angeles and was published
without malice, it was not libelous.

[2] It is apparently conceded by both parties that a
newspaper stands in such relation to the people of the com-
munity in which it is published and circulated that, with
regard to publications therein concerning local public officers,
it comes within the scope of that part of subdivision 3, re-
quiring "a reasonable ground for supposing the motive for
the communication innocent," if the matter published has
the other characteristics of a privileged communication.
This is the correct rule, but it does not arise from the fact
that the publication is made in a newspaper. It is based on
the fact that the official conduct of public officers, especially
in a government by the people, is a matter of public concern
of which every citizen may speak in good faith and without
malice. The privilege of the newspaper is in nowise different
from that of any citizen of the community. (*Palmer* v. *Con-
cord,* 48 N. H. 216, [97 Am. Dec. 605].) This is not the
universal rule, and in some jurisdictions it is not accepted,
but we think the prevailing and better opinion is in accord-
ance with what we have just said. (*Walsh* v. *Pulitzer P.
Co.,* 250 Mo. 153, [Ann. Cas. 1914C, 985, 157 S. W. 326];
*Coleman* v. *MacLennan,* 78 Kan. 711, [130 Am. St. Rep. 390,
20 L. R. A. (N. S.) 361, 98 Pac. 281]; *Scripps* v. *Foster,* 41
Mich. 745, [3 N. W. 216]; *Palmer* v. *Concord, supra; Mott*
v. *Dawson,* 46 Iowa, 537; *Express P. Co.* v. *Copeland,* 64
Tex. 358; Newell on Slander and Libel, 3d ed., sec. 633;
Odgers on Slander and Libel, p. 193; Folkard on Slander
and Libel, pp. 149, 171; 25 Cyc. 400, 403; 18 Am. & Eng.
Ency. of Law, 1041; *Schomberg* v. *Walker,* 132 Cal. 229,
[64 Pac. 290].)

[3]   Since the conduct of public officers in the administration of their offices is a matter in which every citizen of the community which they serve is interested, the publication in question, if otherwise privileged, must be considered as one made to persons interested, and on an occasion which would ordinarily afford reasonable grounds for supposing that it was made from innocent motives.   The publication, therefore, appears to come within this part of the definition of privilege as given in subdivision 3 aforesaid.

[4]   It appears that the chief of police is not an elective officer, but is appointed by the mayor of Los Angeles, and is not subject to recall, but may be removed by the mayor. There are some decisions which hold that a communication concerning a public officer which is not made to those having the power of removal or of appointment, but is made to the public generally, is not privileged.   We are of the opinion, however, that this rule should not be followed.   It is the result of ancient decisions made before the effect of popular government became fully appreciated.   Every citizen has the right to apply to the mayor in such a case for the removal of an unfit or corrupt officer, and we are of the opinion that communications made in good faith and without malice to the public generally respecting the conduct of such officer come within the spirit and purpose of the statute regarding privileged communications.   They tend to promote knowledge concerning such officers and give citizens a basis for their petitions to the mayor.

The plaintiff contends that the privilege does not protect one in making a *false* charge against a public officer, however innocent the motive, and especially that it does not protect one who charges a public officer with the commission of crime.

There are many cases in this state and elsewhere which support this claim.   The plaintiff relies on the decisions of this court in *Dauphiny* v. *Buhne,* 153 Cal. 759, [126 Am. St. Rep. 136, 96 Pac. 880], and *Jarman* v. *Rea,* 137 Cal. 350, [70 Pac. 216].

*Jarman* v. *Rea, supra,* was decided in 1902.   The court below had instructed the jury that "a candidate for office is as much entitled to protection from defamation as any other citizen.   Whoever charges him falsely with the com-

mission of a crime, . . . must make good the injury thereby occasioned. He may not avoid this just responsibility by the claim that he acted in good faith without malice." The opinion in the case states that "where a crime is imputed malice is presumed"; that the presumption is not rebutted by showing that the words were uttered in the belief that they were true and that "nothing short of alleging and proving their truth will rebut the inference of malice." In support of these statements the court cited and quoted from *Sweeney* v. *Baker*, 13 W. Va. 158, [31 Am. Rep. 757]; *Seeley* v. *Blair*, Wright (Ohio), 358, 686; *Root* v. *King*, 7 Cow. (N. Y.) 613; *King* v. *Root*, 4 Wend. (N. Y.) 113, [21 Am. Dec. 102]; *Smith* v. *Burrus*, 106 Mo. 94, [27 Am. St. Rep. 329, 13 L. R. A. 59, 16 S. W. 881]; *Commonwealth* v. *Clap*, 4 Mass. 163, [3 Am. Dec. 212], and *Rearick* v. *Wilcox*, 81 Ill. 77. Each of these cases supports the opinion. The instruction was held to be a correct interpretation of subdivision 3 of section 47 of the Civil Code.

In *Dauphiny* v. *Buhne, supra*, the plaintiff was a member of the council of Eureka and a candidate for re-election. The publication complained of in effect charged the plaintiff with soliciting a bribe as a member of such council. The answer alleged that the publication was made without malice and for the promotion of the public interest and welfare. The evidence on the subject was, in effect, that the publication was made without malice, in the belief that it was true and for the information of the public. The trial court instructed the jury substantially in the language of subdivision 3 aforesaid, that if the publication was made as the above evidence indicated it was privileged. This was held to be error and the opinion states that when a false charge of criminal misconduct is made against an officer, or a candidate for office, the publisher thereof cannot "escape liability on the ground that the charge was made with good intentions and for justifiable ends without malice and under even an honest belief that the charge is true, and that the occasion of his candidacy called for its publication"; that "there is no privilege of publication under the code, or general law, which will exempt one from responsibility for falsehood," and that "one can justify the publication of a libel against

a candidate for office upon privilege only by proof that the accusation is true.''

We are unable to reconcile these decisions with the aforesaid provisions of the code on the subject. In denying a rehearing from the district court of appeal in *Adams* v. *Cameron,* 27 Cal. App. 641, [150 Pac. 1005, 151 Pac. 286], we refused approval of the doctrine stated in the above-mentioned cases, which that court had followed. We take this opportunity of stating our reasons for holding those decisions erroneous.

[5] Since a libel is ''a false and unprivileged publication'' (section 45), it follows that the publication must be both false *and* unprivileged in order that it shall constitute an actionable libel. The allegation and proof that it is true in the sense intended constitute one defense. Allegations and proof that it was privileged upon any of the grounds set forth in section 47 also constitute a defense. The defense of privilege under subdivision 3 of section 47 does not depend at all on the truth of the defamatory charge. With respect to that form of qualified privilege the code does not require that the publication shall be true in order to bring it within the protection of the privilege. The language of the code clearly implies that the publication may be privileged, although it is untrue. To hold that it is necessary to allege and prove the truth of the charge in order to establish the defense that it was privileged under this subdivision would destroy the distinction between the defense of truth and the defense of privilege, and would render the defense of privilege entirely useless, since the proof that it was true would be a complete defense without proof of any other facts and without proving the absence of actual malice.

Furthermore, the proposition that one is not liable for damage if, without malice, he states something to another which under the circumstances he is lawfully authorized to tell him, necessarily implies that the statement made may not be accurate; that is to say, that it may be untrue, but that under such circumstances the plaintiff cannot recover damages. This is the established law in many cases of privilege and no question is ever made about it. For example, if one is about to employ a servant and inquires of a former employer about his character, the former employer is excused

for any information he may give in answer to such inquiry, providing he makes the statement in good faith, believing it to be true, and without malice, although the statements may in fact be untrue. This is true in almost any relation where one person is under a duty to give information to another and does so in good faith and without malice. The failure to give accurate statements does not of itself render him liable for damages in an action for libel or slander. Almost all the cases holding that the statement must be true are cases involving public actions in newspapers regarding public officers or candidates for public office. There is no just ground for any distinction between that class of cases and those above mentioned. The code places them all under the same rule.

While there are many decisions in other states which support the rule laid down in *Dauphiny* v. *Buhne* and *Jarman* v. *Rea,* there are others holding the contrary. In *Coleman* v. *MacLennan,* 78 Kan. 729, [130 Am. St. Rep. 390, 20 L. R. A. (N. S.) 361, 98 Pac. 281], the court said: "We think a person may in good faith publish whatever he honestly believes to be true, and essential to the protection of his own interests, or the interests of the person or persons to whom he makes the publication, without committing a public offense, although what he publishes may in fact not be true and may be injurious to the character of others." In *Palmer* v. *Concord, supra,* the court says that one who makes a publication in a newspaper upon a privileged occasion "is not guilty of libel if the facts alleged were true, or if he had probable cause to believe, and did believe, that they were true." In *Mott* v. *Dawson, supra,* the words were spoken on a privileged occasion and the court said that if they were spoken without malice, believing them to be true, and having reasonable cause so to believe, the defendant was not liable. This implies that they may have been false. In *Express P. Co.* v. *Copeland,* 64 Tex. 358, the court said respecting privileged publications, that they "must be confined to the truth, or what in good faith from probable cause is believed to be true," and that if the statements were false, the defendant could only defeat the action by showing that they were made in good faith in the belief of their truth, and upon just and reasonable grounds for that belief. There are many other

cases of similar import, and we need not multiply citations on the point. These decisions cannot be reconciled with the theory that it is always necessary to prove the truth of a publication in order to bring it within the defense that it was privileged. We are satisfied that *Dauphiny* v. *Buhne* and *Jarman* v. *Rea* went too far in declaring that a privileged communication must be true in order to make it privileged, and that they should be overruled so far as they so declare.

[6] With regard to this form of qualified privilege, no logical distinction can be made between a false charge of crime and a false charge of any other fact of a defamatory character. The occasion and the relations between the one making the charge and those to whom it is made being such that the communication would be privileged, the right of the publisher to speak or write is complete and unqualified, under the code, except that he must speak or write "without malice." When under these conditions he honestly believes that the person of whom he speaks or writes is guilty of a crime of a nature that makes the fact material to the interests of those whom he addresses, it is as much his right and duty to declare to them that fact as it would be to tell them any other fact pertinent to the occasion and material to their interests. [7] If the publisher of a newspaper honestly believes that a public officer has committed crime of a nature which would indicate that he is unfit for the office he holds, we think he is not liable for damages under the code in a civil action for libel when, without malice, and so believing, he publishes a statement to that effect to the community served by the officer.

[8] The word "malice" in the provisions of the Civil Code upon the subject of libel and slander means actual or express malice, as distinguished from that somewhat fictional form of malice sometimes described as "a wrongful act done intentionally without just cause or excuse," or as "the absence of legal excuse." This was decided upon a very elaborate discussion of the subject in *Davis* v. *Hearst,* 160 Cal. 155 to 168, [116 Pac. 530]. The court there held that "A full recovery in compensatory damages may be had under our civil law of libel without the pleading of malice, without the proof of malice, and without the existence of

malice." The court was careful to say that it was here speaking of express malice or actual malice and not of the fictional malice referred to which, in some jurisdictions, but not in this state, is held to be a necessary ingredient of libel. With regard to actual or express malice, it was decided that it was material only where the plaintiff alleged it in the complaint as the foundation of a claim for punitive damages, or where the defendant in his answer alleged the absence of such malice as one of the necessary conditions of the defense that it was a privileged communication under one or more of the three varieties of qualified privilege described in subdivisions 3, 4, or 5 of section 47 of the Civil Code. Actual malice was there defined as "a state of mind arising from hatred or illwill, evidencing a willingness to vex, annoy, or injure another person," and " . . . the motive and willingness to vex, harass, annoy, or injure." It was said that such actual malice could be established "either by direct proof of the state of mind of the person, or by indirect evidence so satisfying to the jury that they may from it infer and find the existence of this malice in fact"; that the evidence "may be direct . . . , going to declarations, acts and conduct of the defendant, showing personal ill will toward the plaintiff, but it will more usually be indirect or inferred . . . , and to this end of proving malice inferentially all legitimate evidence is admissible, bearing upon the general course of conduct of the defendant toward the plaintiff, the internal evidence furnished by the character of the libel, and any other specific facts and circumstances not in direct proof of the malice, but from which the existence may be logically inferred, herein including the circumstances, if it be found to exist, of wanton recklessness and heedlessness of plaintiff's rights."
[9] It is further said that actual malice may be inferred from the publication of a defamatory charge that is false in fact and not within the realm of absolute privilege defined in subdivisions 1 and 2 of section 47. Actual malice may be inferred by the court or jury where the charge is false and is libelous *per se* and the defendant publishes it without having probable cause for believing it to be true, and such inference is sufficient to defeat the defense of qualified privilege. (*Smedley* v. *Soule*, 125 Mich. 192, [84 N. W. 63]; *Quinn* v. *Scott*, 22 Minn. 456; *Carpenter* v. *Bailey*, 53 N. H. 590.)

[10] On the subject of actual malice it is important to note further that while one may, on a privileged occasion and without malice, publish to the interested persons what may be false, if he honestly believes it to be true, he is not by this rule given a license to overdraw, exaggerate, or to color the facts in his communication. The manner of statement is material upon the question of malice, and if the facts believed to be true are exaggerated, overdrawn, or colored to the detriment of plaintiff, or are not stated fully and fairly with respect to the plaintiff, the court. or jury may properly consider these circumstances as evidence tending to prove actual malice, and they may be sufficient for that purpose without other evidence on the subject.

Upon the trial there appeared to be some confusion concerning the issues involved, and in view of the necessity for a new trial it is proper to state our understanding on the subject. [11] The plaintiff, as we have said, struck out of his complaint the allegations that the publication was made with actual malice and the prayer for punitive damages. So far as the plaintiff's case was concerned, this eliminated the issue of malice and he could recover without introducing any evidence on that subject. But by averring in their answer that the publication was on a privileged occasion and was made without malice, the defendants directly put in issue the question of actual malice. As absence of actual malice was an essential part of that defense, it was necessary for the defendants to prove such absence in order to sustain this defense. The withdrawal by the plaintiff of his claim for punitive damages and the striking out of the averments of actual malice from the complaint did not establish the fact that defendants published the cartoon without actual malice, nor excuse them from the necessity of proving absence of such malice, if they desired to establish that defense. Neither party appears to have understood this; the plaintiff's attorney announced that plaintiff "waived all malice," and the court said to the jury at the beginning of the trial that "malice has nothing to do with the case." The defendants introduced no evidence to show the absence of actual malice on their part in publishing the cartoon. The effect of the proceedings and remarks during the trial was equivalent to an admission that the publication was made without malice. If it had not been for this admission and the instructions of

the court about to be stated, the jury would have been at liberty to have inferred actual malice from the cartoon itself.

[12] The court instructed the jury to the effect that it was for it to determine the meaning and effect of the cartoon, and that if it was reasonably susceptible of conveying to the ordinary person the meaning that the plaintiff was officially dishonest, or that he was guilty of accepting a bribe, or was ready to accept a bribe, then the publication was not privileged and the plaintiff was entitled to recover compensatory damages. The answer did not attempt to state as a defense that the cartoon was true if it was susceptible of the meaning just stated, and no evidence was given to that effect. The court in giving these instructions took cognizance of the admission of the plaintiff that the publication was without malice, but assumed, on the authority of *Dauphiny* v. *Buhne, supra,* and *Jarman* v. *Rea, supra,* that there could be no privilege unless the charge made by the cartoon in the sense above stated was true, and that it was incumbent upon the defendants to prove such truth. Our conclusion in regard to this point demonstrates that the court erred in this instruction, and for this reason it is necessary to reverse the judgment.

The court further instructed the jury in effect that it could not consider the publication as privileged and that it had nothing to do with that defense. This was evidently also based on the authority of the two cases last cited, and it was erroneous for the reasons above given.

The defendants earnestly insist that the cartoon is not susceptible of the meaning contended for by the plaintiff and suggested by the court in the instructions above referred to, and claim that it did not refer to the plaintiff personally or officially except to suggest that he was incompetent and inefficient, and that so far as it suggested dishonesty or crime, it referred exclusively to a number of special policemen appointed by the plaintiff and detailed to attend upon certain places in the city during the night-time, and that it was so understood by those who saw and read it. Upon this theory, the answer set up in justification that these special policemen were guilty of dishonesty and bribery, but it did not aver that the plaintiff participated therein or had any guilty knowledge thereof. Since we must order a new trial,

it is proper to consider these claims and other objections to rulings made upon the trial.

The cartoon was as follows:

## NEW HEADLINER IN HIS PROTEAN ACT

On its face this picture is clearly a libel upon the plaintiff as chief of police. Its natural effect would be to expose him to contempt, ridicule, and obloquy at the least. It is also obvious that it might readily be understood by any person who saw it as the equivalent of a charge that plaintiff had been guilty of accepting bribes or was ready to do so. We do not perceive how it could be otherwise understood by any person who had no knowledge of the alleged offenses of the special policemen  mentioned in the answer, and we think

that even a person who had some knowledge thereof would understand the cartoon to suggest that the plaintiff was a participant in, or had a guilty knowledge of, those offenses. It is unnecessary to dilate upon this point. A look at the cartoon is sufficient.

[13] The defendants had a right to prove that the plaintiff's general reputation for efficiency and competency as chief of police was bad. That trait of his character was put in issue by the pleadings, and the cartoon was susceptible of an interpretation to the effect that he was inefficient and incompetent. His general bad reputation upon any trait of character in issue was a proper subject of proof by the defendants in mitigation of damages. (Newell on Slander and Libel, 3d ed., p. 1068; *Hearne* v. *De Young,* 132 Cal. 362, [64 Pac. 576].) We are not certain from the transcript whether this kind of evidence was excluded absolutely by the court below, or whether it was excluded because of the fact that it was not understood that it was offered in mitigation of damages.

[4] Proof by the defendants of offenses and dereliction of duty on the part of the special policemen aforesaid would not be relevant or competent unless it was also shown that the plaintiff had some knowledge thereof at the time, or that after being informed thereof he failed to take the proper action in regard thereto. The court did not err in rejecting such evidence where it was admitted by counsel that they had no intention of following it up by proof connecting the plaintiff therewith.

As it may be necessary prior to a new trial for both plaintiff and defendants to amend their pleadings, it is unnecessary to consider here the objections made to the refusal of the court to allow the defendants to file a fourth amended answer.

A number of other rulings are objected to and presented in the briefs, but we do not find them of sufficient importance to justify a discussion thereof.

The judgment is reversed.

Angellotti, C. J., Olney, J., Wilbur, J., Sloane, J., Lennon, J., and Lawlor J., concurred.

Rehearing denied.

All the Justices concurred.